Drexel A. Bradshaw (SBN 209584)
S. Clinton Woods (SBN 246054)
Ellen N. Denham (SBN 289838)
Bradshaw & Associates, P.C.
1 Sansome Street
Thirty-fourth Floor
San Francisco, CA 94104
Phone: (415) 433-4800
Fax:    (415) 433-4841

Attorneys for Plaintiff John Muldoon

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| John Muldoon, Individually and On Behalf of All Others Similarly Situated and In the Interest of the General Public,<br><br>          Plaintiff,<br><br>          v.<br><br>DePuy Orthopaedics, Inc., an Indiana Corporation, Depuy, Inc., an Indiana Corporation, Johnson & Johnson International, Inc., a Delaware Corporation, Johnson & Johnson Services, Inc., a Delaware Corporation, Johnson & Johnson, a New Jersey Corporation, Dr. David Dodgin, an individual, John Muir Health, a California Nonprofit Benefit Corporation, and DOES 1 – 500, inclusive,<br><br>          Defendants. | CASE NO.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}

1    John Muldoon, individually and on behalf of all others similarly situated ("Plaintiffs"), sues Dr.

2    David Dodgin, an individual, John Muir Health, a California Non-profit Benefit Corporation, DePuy

3    Orthopaedics, Inc., an Indiana Corporation, Depuy, Inc., an Indiana Corporation, Johnson & Johnson

4    Services, Inc., a New Jersey Corporation, and Johnson & Johnson International, Inc., a Delaware

5    Corporation, and DOES 1 – 500 (together, "Defendants").  Plaintiff complains against Defendants, and

6    each of them, demands a trial by jury of all issues, and for causes of action alleges:

7                                         **PARTIES**

8    1.    Plaintiff John Muldoon ("Plaintiff"), an individual, is over the age of eighteen (18), and is a

9          resident of Contra Costa County, California. Plaintiff brings this action for damages as a result of

10         a defective hip prosthesis which was placed into the stream of commerce in, without limitation,

11         the County of Contra Costa, in the State of California, by one or more named Defendants.

12   2.    Plaintiff is informed and believes and thereon alleges that Defendant DEPUY ORTHOPAEDICS,

13         INC. is a corporation organized and existing under the laws of the State of Indiana, with its

14         principal place of business located at 700 Orthopaedic Drive, Warsaw, Indiana 46581. Plaintiff is

15         informed and believes and thereon alleges that Defendant DEPUY ORTHOPAEDICS, INC. is a

16         wholly owned subsidiary of Defendant Johnson & Johnson, or a wholly owned subsidiary of

17         Defendant DePuy, Inc. At all times relevant to this action, Defendant DEPUY ORTHOPAEDICS,

18         INC. was authorized to, and did, conduct business throughout the State of California, including

19         without limitation in the County of Contra Costa, State of California.

20   3.    Plaintiff is informed and believes and thereon alleges that Defendant DEPUY, INC. is a

21         corporation organized and existing under the laws of the State of Indiana, with its principal place

22         of business located at 700 Orthopaedic Drive, Warsaw, Indiana. Plaintiff is informed and believes

23         and thereon alleges that Defendant DEPUY, INC. is a wholly owned subsidiary of Defendant

24         Johnson & Johnson, Inc. At all times relevant to this action, Defendant DEPUY, INC. was

25         authorized to, and did, conduct business throughout the State of California, including without

26         limitation in the County of Contra Costa, State of California.

27   4.    Plaintiff is informed and believes and thereon alleges that Defendant JOHNSON & JOHNSON

28         SERVICES, INC. is a corporation organized and existing under the laws of the State of Delaware,

- 2 -

with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Plaintiff is informed and believes and thereon alleges that Defendant JOHNSON & JOHNSON SERVICES, INC. is a subsidiary of Defendant Johnson & Johnson. At all times relevant to this action, Defendant JOHNSON & JOHNSON SERVICES, INC., was authorized to, and did, conduct business throughout the State of California, including without limitation in the County of Contra Costa, State of California.

5.    Plaintiff is informed and believes and thereon alleges that Defendant JOHNSON & JOHNSON INTERNATIONAL, INC. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Plaintiff is informed and believes and thereon alleges that Defendant JOHNSON & JOHNSON INTERNATIONAL, INC. is a subsidiary of Defendant Johnson & Johnson. At all times relevant to this action, Defendant JOHNSON & JOHNSON INTERNATIONAL, INC. was authorized to, and did, conduct business throughout the State of California, including without limitation in the County of Contra Costa, State of California.

6.    Plaintiff is informed and believes and thereon alleges that Defendant JOHNSON & JOHNSON is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. Plaintiff is informed and believes and thereon alleges that Defendant JOHNSON & JOHNSON is the parent company of Defendants Johnson & Johnson Services, Inc., Johnson & Johnson International, Inc., DePuy, Inc., and DePuy Orthopaedics, Inc. At all times relevant to this action, Defendant JOHNSON & JOHNSON was authorized to, and did, conduct business throughout the State of California, including without limitation in the County of Contra Costa, State of California.

7.    Plaintiff is informed and believes and thereon alleges that Defendants JOHNSON & JOHNSON, JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., DEPUY, INC., AND DEPUY ORTHOPAEDICS, INC. (hereinafter collectively denominated solely for convenience as "DePuy") jointly developed, manufactured, marketed, sold, and/or distributed medical devices generally known as the DePuy Corail Stem, DePuy

Pinnacle shell and metal liner and DePuy Biolox Delta Ceramic femoral head throughout the United States, and throughout the State of California, including without limitation in the County of Contra Costa, State of California.

8.   Plaintiff is informed and believes and thereon alleges that Defendant JOHN MUIR HEALTH is a non-profit benefit corporation organized and existing under the laws of the State of California, with its principal place of business located at 1400 Treat Boulevard, Walnut Creek, California 94597.

9.   Plaintiff is informed and believes and thereon alleges that Defendant Dr. DAVID A. DODGIN acted as the employee and agent of Defendant JOHN MUIR HEALTH acting within the scope of his employment at all relevant times herein. Defendant Dr. DAVID A. DODGIN acted as the employee and agent of Defendant John Muir Health and acted

10.  Plaintiff is informed and believes and thereon alleges that Defendant Dr. DAVID A. DODGIN held a California Physician and Surgeon A License from the California Medical Board, License Number 74871, from June 7, 2001 to September 30, 2008.  Dr. DAVID A. DODGIN's license renewal fee has not been paid since 2008 and he is not permitted to practice in California at this time.

11.  Plaintiff is informed and believes and thereon alleges that Defendant Dr. DAVID A. DODGIN holds a Texas Full Medical License from the Texas Medical Board, License Number N4383 issued on November 6, 2009.

12.  Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Doe 1 through Doe 200, inclusive.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes that each of the Doe defendants is responsible in some manner for the occurrences and injuries alleged in this complaint. Plaintiff will seek leave to amend this Complaint to assert the true names, capacities, functions, occupations, and businesses, along with the factual basis for liability of such fictitiously named defendants, when ascertained.

13.  At all times mentioned in the causes of action to which this paragraph is incorporated by reference, each and every Defendant was the agent or employee of each and every other

- 4 -

1   Defendant.   In doing the things alleged in the causes of action into which this paragraph is

2   incorporated by reference, each and every Defendant was acting within the course and scope of

3   this agency or employment and was acting with the consent, permission, and authorization of each

4   of the remaining Defendants.  All actions of each of the Defendants alleged in the causes of action

5   into which this paragraph is incorporated by reference were ratified and approved by the officers

6   or managing agents of every other Defendant.

7   ## JURISDICTION

8   14.   This Court has subject matter jurisdiction pursuant to Class Action Fairness Act of 2005, 28

9   U.S.C. § 1332(d)(2)(A), because the amount in controversy exceeds $5 million exclusive of

10   interest and costs, the class has over one hundred (100) members, and Plaintiff is a citizen of a

11   state (California) different from at least one of the defendants.

12   15.   Venue is Proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because a

13   substantial part of the events or omissions giving rise to the claims occurred in this District and

14   Defendants are subject to personal jurisdiction in this District.

15   ## INTRADISTRICT ASSIGNMENT

16   16.   Pursuant to Civil L-R 3.2(c), intradistrict assignment in San Francisco is proper because the

17   unlawful conduct that gives rise to these claims occurred in the County of Contra Costa.

18   ## FACTS COMMON TO ALL CAUSES OF ACTION

19   ### Plaintiff's Original Hip Implant Surgery

20   17.   On January 3, 2007, Plaintiff John Muldoon ("Plaintiff") had computer navigated left total hip

21   arthroplasty surgery ("January 2007 surgery") to address what was identified and diagnosed pre-

22   surgery as left hip osteoarthritis.

23   18.   Defendant Dr. David A. Dodgin ("Dr. Dodgin") performed the surgery at John Muir Medical

24   Center, Concord Campus, Concord, CA 94520. On information and belief, Defendant John Muir

25   Health employed Dr. Dodgin as an orthopedic surgeon.

26   19.   During the January 2007 surgery, Dr. Dodgin surgically implanted a prosthetic medical device

27   system which contained what is known as a "ceramic-on-metal" bearing surface into Plaintiff's

28   hip. Plaintiff is informed and believes and thereon alleges that this implanted prosthetic medical

- 5 -

device system is made out of the following components: a DePuy Corail stem size 11, standard offset collared, DePuy Pinnacle shell size 54 with 36 mm metal liner and +5 x 36 mm Delta ceramic femoral head ("DePuy Components").

20. Plaintiff is informed and believes and thereon alleges that as a result of the design, manufacture and composition of that original hip prosthesis medical system, and its accompanying warnings (or lack thereof), certain components thereof eventually failed, creating metallic debris and/or loosening, which caused severe pain, discomfort and injury as alleged.

21. At some point after the January 2007 surgery, but unbeknownst to Plaintiff, friction and wear between the ceramic head and cobalt-chromium metal liner began to cause large amounts of toxic cobalt-chromium metal ions and particles to be released into Plaintiff's body.

22. Plaintiff regularly complained of pain and discomfort in his left hip, leg and foot to his physicians after the January 2007 surgery. In an attempt to rectify this pain and discomfort, Plaintiff endured, among other things, cortisone shots, prescription pain relievers, and physical therapy exercises, all with limited degrees of success.

23. Finally, on or around August 2014, Dr. Louay Toma performed a physical examination of Plaintiff's hip and ordered bloodwork to test Plaintiff for elevated levels of metal ions. The bloodwork showed high levels of cobalt and chromium and Dr. Toma thereafter recommended an MRI of Plaintiff's hip. After review of the MRI, Dr. Toma recommended revision surgery to remove the implanted ceramic-on-metal bearing surface.

24. Elevated levels of cobalt and chromium in the blood may cause toxic and debilitating side effects including: tinnitus, deafness, vertigo, visual disturbances, skin rashes, hypothyroidism, tremor, shortness of breath, mood disorders, dementia, and heart failure.

25. On October 15, 2014, Dr. Toma performed the revision surgery on Plaintiff, and replaced the defective ceramic-on-metal bearing surface with a ceramic-on-plastic bearing surface.

<u>The Defective DePuy Hip Implant Medical Device System</u>

26. Each component in Plaintiff's prosthetic medical device systems is considered a Class III medical device. Class III medical devices are those that operate to sustain human life, are of substantial importance in preventing impairment of human health, or pose potentially unreasonable risks to

- 6 -

1    patients.

2    27.   The Medical System Amendments to the Food, Drug, and Cosmetics Act of 1938 ("MDA"),

3          require Class III medical devices to undergo premarket approval by the FDA, a process which

4          obligates the manufacturer to design and implement a clinical investigation, and to submit the

5          results of that investigation to the FDA.

6    28.   Premarket approval is a rigorous process that requires a manufacturer to submit what is typically a

7          multivolume application that includes, among other things, full reports of all studies and

8          investigations of the device's safety and effectiveness that have been published or should

9          reasonably be known to the applicant; a full statement of the device's components, ingredients,

10         and properties, and of the principles of operation; a full description of the methods used in, and

11         the facilities and controls used for, the manufacture, processing, and, when relevant, packing and

12         installation of, such device; samples of components required by the FDA; and a specimen of the

13         proposed labeling.

14   29.   The FDA may grant premarket approval only if it finds that there is reasonable assurance that the

15         device is safe and effective and must weigh any probable benefit to health from the use of the

16         device against any probable risk of injury or illness from such use.

17   30.   A medical device on the market prior to the effective date of the MDA (a so-called

18         "grandfathered" system), is not required to undergo premarket approval. In addition, a medical

19         device marketed after the MDA's effective date may bypass the rigorous premarket approval

20         process if the device is "substantially equivalent" to a "grandfathered" pre-MDA system (*i.e.*, a

21         device approved prior to May 28, 1976.) This exception to premarket approval is known as the

22         "510(k)" process and simply requires the manufacturer to notify the FDA under section 510(k) of

23         the MDA of its intent to market the devices at least 90 days prior to the device's introduction on

24         the market, and to explain the device's substantial equivalence to a pre-MDA predicate device.

25         The FDA may then approve the new device for sale in the United States.

26   31.   Rather than being approved for use by the FDA pursuant to the rigorous premarket approval

27         process, each component of Plaintiff's prosthetic medical device system was certified to be sold

28         on the basis of its "substantial equivalence" to a device that DePuy sold and implanted prior to the

- 7 -

1    enactment of the MDA in 1976.

2    32.   The prosthetic medical device systems generally used for hip replacement surgery include four

3          components: a femoral stem, femoral head (or ball), an acetabulum cup (or socket), and a liner for

4          the acetabulum cup. A femoral stem is inserted into the femur bone, the femoral head connects to

5          the top of the stem and then makes contact with a liner that is attached to the interior portion of an

6          acetabulum cup.

7    33.   Plaintiff's prosthetic medical device systems are considered to contain a "ceramic-on-metal"

8          bearing surfaces because the ceramic femoral head rotated within the metal liner inserted into the

9          acetabular cup.

10   34.   At the time of Plaintiff's 2007 surgery, the FDA had not approved *any* "ceramic-on-metal" bearing

11         surface combinations for hip replacement surgeries.

12   35.   The individual components used in Plaintiff's prosthetic medical device system each received

13         FDA approval at different times. The individual components were not FDA approved to be used

14         as a system. The DePuy Pinnacle metal-on-metal liners received 510(k) FDA approval in

15         December 2000. The DePuy Pinnacle Acetabular Cups received 510(k) FDA approval in March

16         2000. The DePuy Corail system received 510(k) FDA approval in February 2005. The DePuy

17         Delta Ceramic femoral head received 510(k) FDA approval in September 2006.

18   36.   DePuy did not file a premarket approval application or start the required 2-year randomized

19         clinical trial for any ceramic-on-metal bearing system until 2009, two years after Plaintiff had the

20         components surgically implanted in his hip, making the implant into Plaintiff a     direct violation

21         of the MDA.

22   37.   DePuy filed its premarket approval application for the "Pinnacle CoMplete Acetabular Hip

23         System" in February 2009, and the FDA approved this system in June 2011. DePuy touted the

24         system as the "first-of-a-kind" ceramic-on-metal articulation of hip implant systems.

25   38.   In 2013, just two short years after FDA approval, DePuy discontinued sales of its CoMplete

26         Acetabular Hip System, allegedly due to low sales. On information and belief, the true reason

27         DePuy discontinued sales of the CoMplete Acetabular Hip System is because the ceramic-on-

28         metal system is defective and unsafe for consumers.

- 8 -

1

<u>DePuy's Kickbacks to Doctors</u>

2   39.   The problem of defective hip implants has been compounded by the fact that DePuy has for years

3         been paying kickbacks to orthopedic surgeons who use their implants. The kickbacks have

4         coerced orthopedic surgeons to continue to implant defective and dangerous products.

5   40.   The Anti-Kickback Statute enables the government to impose significant penalties against any

6         person or entity who receives, pays, offers or solicits anything of value in order to induce or

7         reward the ordering or referral of products and services covered by federal health care programs.

8         Violators are guilty of a felony, face civil monetary penalties of up to $25,000.00 per violation,

9         and may be the subject of a claim for treble damages under the False Claims Act. *See* 42 U.S.C.. §

10        1320a-7b(b).

11  41.   A criminal complaint was brought against DePuy and other hip device manufacturers for violation

12        of the Anti-Kickback Statute by entering into financial arrangements with orthopedic surgeons

13        and hospitals for the use of DePuy hip implants. The complaint covered the period from 2002 to

14        2006.

15  42.   The criminal complaint against Defendant DePuy states in part:

16            "Object of the Conspiracy

17               2.  Defendant DePuy used consulting agreements with orthopedic surgeons, and

18            payments made thereunder, in part as inducements for such surgeons' use of DePuy's

19            artificial hip and knee reconstruction and replacement products.

20            Overt Act

21               3.  In furtherance of the conspiracy and to effect the unlawful object thereof, defendant

22            DePuy and its co-conspirators committed, and caused to be committed, the following overt

23            acts in the District of New Jersey and elsewhere: From in or about January 2002 to in or

24            about December 2006, defendant DePuy entered into consulting agreements with certain

25            orthopedic surgeons designed, in part, to induce the surgeons to use, and cause the purchase

26            of, DePuy's hip and knee reconstruction products."[1]

27  43.   As a result, Defendant DePuy entered into a Deferred Prosecution Agreement with the U.S.

28

---

[1] USA v. DePuy Orthopaedics, Inc., U.S. Dist. Ct. New Jersey, Mag. No. 07-8131 (MCA).

- 9 -

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}

1   Attorney's Office on September 28, 2007.

2   44.   DePuy was one of five companies that were penalized by the U.S. Department of Justice in 2007.

3   These five companies account for ninety-five (95) percent of the lucrative market in hip surgical

4   implants. According to the U.S. Justice Department, surgeons who had agreements with

5   manufacturers were routinely paid tens to hundreds of thousands of dollars per year for consulting

6   contracts and were often lavished with trips and other expensive perks. As a result, DePuy was

7   fined $84,700,000.00 and the Justice Department stated:

8        "This industry routinely violated the anti-kickback statute by paying physicians for the

9   purpose of exclusively using their products," Christie said. "Prior to our investigation, many

10   orthopedic surgeons in this country made decisions predicated on how much money they

11   could make - choosing which device to implant by going to the highest bidder. With these

12   agreements in place, we expect doctors to make decisions based on what is in the best interest

13   of their patients - not the best interests of their bank accounts."

14        The financial inducements in the form of consulting agreements were entered

15   into with hundreds of surgeons throughout the 2002-2006 timeframe. The investigation

16   revealed instances in which physicians did little or no work for the financial inducement but

17   did agree to exclusively use the paying company's products.

18        The physician consultants also failed to disclose the existence of these

19   relationships with the companies to the hospitals where the surgeries were performed and,

20   more importantly, to the patients they treated. [2]

21   45.   Unfortunately, the Deferred Prosecution Agreement has not resulted in any significant change or

22   benefit to patients. At least one physician has noted: "It's back to business as usual . . . Nothing

23   will change until someone goes to jail. It's a big game."[3]

24   46.   The kickback scheme, unabated and unchecked for many years, has resulted in disruption of the

25   doctor/patient relationship. This, in turn, has caused patients to suffer more extensive damages in

26   many instances.

27   //

28   _____

[2] http://www.justice.gov/usao/nj/press/files/pdffiles/hips0927.rel.pdf
[3] NJ.com: "Results of Gov. Christie's Implant Kick-Back Case Questioned Again," 6/11/10

- 10 -

_____

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}

Defendant Dr. David Dodgin

47. More than ninety (90) days prior to the commencement of this action, Plaintiff served notice upon Dr. Dodgin and John Muir Health, excluding any DOE defendants, pursuant to Code of Civil Procedure, § 364, advising of his intention to sue.

48. Defendant Dr. David A. Dodgin ("Dr. Dodgin") performed Plaintiff's original hip replacement surgery. At that time, he practiced orthopedic surgery at John Muir Medical Center in Concord, California.

49. Shortly after Plaintiff's surgery, on or around May 2007, Dr. Dodgin stopped practicing at John Muir Medical Center and Plaintiff was referred to Dr. Louay Toma for follow-up visits. On information and belief, Dr. Dodgin now practices orthopaedic surgery at Orthopaedic Specialists of Austin, in Austin, Texas.

50. Informed consent is critical to patients and a vital piece of the doctor-patient relationship. Doctors must inform their patients of risks, benefits and alternative treatment options before obtaining consent for surgical procedures.

51. Dr. Dodgin did *not* inform Plaintiff that he intended to use a configuration of medical device implants that had not been FDA approved together as a system. In fact, Dr. Dodgin did not inform Plaintiff of any of the risks of a ceramic-on-metal bearing surface configuration, nor did he explain any other options to Plaintiff.

52. On or around December 28, 2006 Dr. Dodgin lied in his pre-operative report that the surgical plan was a "left total hip arthroplasty using a _____ metal on metal prosthesis" and that "risks, benefits and alternatives have been with surgery [sic]. He has been consented in an informed manner." This lie is in direct violation of Cal. Pen. Code § 471.5.

53. On January 3, 2007, Dr. Dodgin performed the surgery and used a Delta ceramic femoral head and DePuy Pinnacle shell with metal liner and did not inform Plaintiff at any time prior to or after the surgery.

54. On information and belief, Dr. Dodgin has consulted with DePuy Orthopaedics for many yearsand continues to receive massive financial benefits from this arrangement. For example, in 2009, DePuy paid Dr. Dodgin over $56,000.00. In 2010, DePuy paid Dr. Dodgin over $30,000.00.

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}

55. Later in 2007, DePuy entered into the Deferred Prosecution Agreement with the U.S. Attorney's Office after a Department of Justice investigation revealed it had used financial inducements, paid to surgeons, to persuade surgeons to use their products.

56. On information and belief, DePuy offered, and Dr. Dodgin accepted, financial incentives in exchange for using a non-FDA approved configuration of DePuy products in Plaintiff's hip replacement surgery.

**DePuy and Dr. Dodgin Conduct Unauthorized Clinical Trials on Unwitting Patients**

57. Clinical investigation of devices on human patients requires applicants to receive an Investigational New Device exemption from the FDA before beginning a study. Additionally, clinical studies must comply with well-developed protocols to ensure the safety of patients and to properly evaluate a device's safety and efficacy.

58. Physicians may use approved devices for off-label uses as long as such uses do not qualify as "research." The National Commission for the Protection of Human Subjects of Biomedical and Behavioral Research states:

> "The purpose of medical or behavioral practice is to provide diagnosis, preventive treatment or therapy to particular individuals. By contrast, the term 'research' designates an activity designed to test an hypothesis, permit conclusions to be drawn, and thereby to develop or contribute to generalizable knowledge (expressed, for example, in theories, principles, and statements of relationships). Research is usually described in a formal protocol that sets forth an objective and a set of procedures designed to reach that objective."[4]

59. DePuy and Dr. Dodgin conspired to research and experiment with the use of DePuy Components on patients, such as Plaintiff, without their knowledge and consent.

60. DePuy attempted to avoid the regulation, oversight and safety provided by clinical trials by convincing orthopedic surgeons to research and experiment with the use the DePuy Components on patients without their knowledge or consent.

61. Through kickbacks and financial inducements, DePuy convinced surgeons to research and experiment with the DePuy Components on unwitting patients. In so doing, DePuy and the

---

[4] http://www.hhs.gov/ohrp/humansubjects/guidance/belmont.html

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}

surgeons they bribed prioritized their own profit over the health and safety of patients.

Dr. Dodgin and John Muir Health Commit Insurance Fraud

62. On information and belief, Dr. David Dodgin and/or John Muir Health and their employees, officers, and agents, submitted claims for payment to various insurers that contained false, fraudulent, and misleading charges.

63. On information and belief, these false, fraudulent, and misleading charges were used to defraud insurance providers and to collect benefits for unauthorized, non-FDA approved procedures.

64. Without discovery, Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those individuals at John Muir Health responsible for actual claim submissions or formulating the policy of submitting these illegal charges.

65. Dr. Dodgin and/or John Muir Health knew, or were reckless in not knowing, that the charges they submitted on behalf of John Muir Health were inaccurate.

## CLASS ACTION ALLEGATIONS

66. This action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and 23(b)(3).

67. For purposes of this Action, the Class is comprised of, and defined as, all persons who had a DePuy prosthetic medical device system which contained a ceramic-on-metal bearing surface surgically implanted before the FDA approved such a bearing surface in 2011 (the "Class").

68. A Sub-Class within the Class is comprised of, and defined as, all persons who had a DePuy prosthetic medical device system which contained a ceramic-on-metal bearing surface surgically implanted by Dr. Dodgin before the FDA approved such a bearing surface in 2011 (the "Sub-Class").

69. **Numerosity.** Upon information and belief the Class includes more than one hundred people. The Class is so numerous and widely dispersed that joinder of all members is impracticable. Disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. The exact identities of members of the Class may be ascertained via reference to Defendants' records, appropriately noticed mailings, telephone calls and in-person meetings with other members of the Class, and if necessary, through the publishing of notices in appropriate

1    local newspapers and similar publications.

2    70.  **Common Questions of Law and Fact.** Predominant common questions of law and fact affect

3         members of the Class as those persons had, and/or continue to have DePuy prosthetic medical

4         device systems with "ceramic on metal" bearing surfaces surgically implanted in their hips.

5         Findings regarding the existence of damage, the cause of damage, and the extent of damage will

6         be common to the Class because of the fact that damage to the Class is allegedly caused by the

7         same series of acts and omissions by Defendants. Common questions of law and fact predominate

8         over questions affecting only individual members and include but are not limited to:

9    71.  Whether DePuy negligently designed, researched, tested, manufactured, marketed, supplied,

10        promoted and/or sold ceramic-on-metal configurations of hip implant systems before such

11        systems were FDA approved;

12   72.  Whether DePuy manufactured ceramic-on-metal configurations of hip implant systems that

13        deviated from product and manufacturer design and specifications;

14   73.  Whether DePuy designed, researched, tested, manufactured, marketed, supplied, promoted and/or

15        sold ceramic-on-metal configurations of hip implant systems that were unsafe, defective, and/or

16        inherently dangerous;

17   74.  Whether DePuy knew or should have known of the risks and dangers of the ceramic-on-metal

18        configurations of hip implant systems and failed to adequately warn consumers of the potential

19        risks and dangers of these products;

20   75.  Whether DePuy failed to adequately test the ceramic-on-metal configurations of hip implant

21        systems to ensure that they were not prone to early failure, and that they would not give rise to

22        physical injury;

23   76.  Whether DePuy expressly warranted that ceramic-on-metal configurations of hip implant systems

24        were safe and effective when, in fact, they were not;

25   77.  Whether DePuy knew the use for which their ceramic heads and metal liners were intended, and

26        impliedly warranted the components to be of merchantable quality and safe for such use;

27   78.  Whether DePuy knowingly and intentionally misrepresented material facts regarding the safety

28        and efficacy of their ceramic-on-metal configurations of hip implant systems;

- 14 -

79. Whether DePuy violated Cal. Bus. & Prof. Code § 17500 by disseminating misleading and deceptive advertisements;

80. Whether DePuy violated Cal. Civ. Code § 1750 by inducing consumers into the purchase of the DePuy Components through the dissemination of false and misleading advertising and representations regarding the safety and effectiveness of the DePuy Components;

81. Whether DePuy violated Cal. Bus. & Prof. Code § 17200 by engaging in unlawful and/or unfair business practices including the dissemination of false and misleading advertisements regarding the safety and effectiveness of acts of the DePuy Products;

82. Whether surgically implanting the DePuy Components into Plaintiff constituted negligence by Dr. Dodgin and John Muir Health;

83. Whether Dr. Dodgin failed to obtain informed consent from Plaintiff regarding the use of the DePuy Components before surgically implanting the components into Plaintiff;

84. Whether Dr. Dodgin breached his fiduciary duty to Plaintiff by failing to reveal his financial involvement with DePuy Orthopaedics; and

85. Whether Dr. Dodgin committed battery by surgically implanting the DePuy Components into Plaintiff's person without Plaintiff's informed consent.

86. **Typicality.** Plaintiffs' claims are typical of the other claims of the other members of the Class, as Plaintiffs and all other members were injured by the same defective prosthetic medical device systems with "ceramic-on-metal" bearing surfaces surgically implanted in their hips.

87. **Adequacy.** Plaintiff John Muldoon will fairly and adequately represent the members of the Class because his claims and interests do not conflict with those of the Class members he seeks to represent and he is similarly situated with members of the Class. Plaintiff's claims are typical of those of the Class, as all members of the Class have been similarly affected by Defendants' common course of conduct. Members of the Class have similar claims against the Defendants as a result of such conduct and such similar claims and injuries far outweigh those that are distinct. The Plaintiff presently named in this Complaint has also retained counsel who are competent and experienced in the litigation of such matters and who have agreed to advance the expenses of this action.

- 15 -

88.   **Superiority.** A class action is superior to other methods of reaching a fair and efficient adjudication of this controversy for many reasons.   Given the high number of members of the Class, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for Class Members to seek redress individually for the wrongs done to them.   If each member of the Class were required to individually litigate his or her own right to recover for injuries suffered as a result of Defendants' actions, it will increase the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

89.   In the alternative, the Class may be certified because:

(a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by the individual Class Members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

(c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

90.   Even if damages suffered by individual members of the Class are distinct, the expense and burden of individual litigation may make it difficult, if not impossible, for all members of the Class to address the wrongs done to them individually.   Class action is the only feasible mechanism that allows the Class an opportunity for recovery and the Defendants to be appropriately sanctioned for such behavior.   Absent a class action, Defendants will retain substantial funds received as a result of the wrongdoing and such unlawful and improper conduct will generally go uncorrected and the Class will be deprived of an efficient means to enforce that liability.

91.   If the claims alleged herein were to be addressed via separate actions, the Class would further run the risk of depleting available funds in earlier-filed actions while leaving insufficient funds to satisfy the claims of later-filed actions.

- 16 -

92. Plaintiff John Muldoon is unaware of any conflict of interest between himself and other members of the Class with respect to this action that would prevent him from acting as class representative. Plaintiff John Muldoon has been informed of his rights and obligations with respect to the filing and prosecution of this action.

<u>**TOLLING**</u>

93. To the extent equitable tolling operates to toll claims by the Class against Defendants, the Class Period should be adjusted accordingly.

94. Plaintiff discovered the facts constituting the following causes of action on or about August through October 2014 when Plaintiff discovered that the original hip prosthesis medical system he received had failed and that his blood contained elevated levels of cobalt and chromium. Plaintiff did not, and could not in the exercise of reasonable diligence, have discovered the facts constituting the following causes of action at any date earlier.

<u>**FIRST CAUSE OF ACTION**</u>

<u>**(NEGLIGENCE)**</u>

<u>**(CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, AND DOES 1 – 200, INCLUSIVE.)**</u>

95. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

96. Prior to, on, and after the date of Plaintiff's hip implant surgery, and at all relevant times, DePuy designed, tested, distributed, manufactured, advertised, sold, and marketed the components used for Plaintiff's hip replacement surgery ("DePuy Components"), to consumers such as Plaintiff, through physicians and surgeons in the United States.

97. Prior to, on, and after the date of Plaintiff's hip implant surgery, DePuy was negligent and careless in and about their design, testing, distribution, manufacture, advertising, sale, and marketing of the DePuy Components.

98. Prior to, on, and after the date of Plaintiff's hip implant surgery, DePuy performed inadequate evaluation and testing of the components used for Plaintiff's hip replacement surgery where such

- 17 -

evaluation and testing would have revealed the propensity of the DePuy Components to cause pain, popping, grinding, lack of mobility, metal sensitivity, loosening of the prosthesis, infection, dislocation, bone fracture, high metal ion levels in the bloodstream, cyst formation, and the necessity for revision surgery to explant the hip devices and replace them with non-defective products.

99. Accumulation of metal ions or metal debris in the body causes various complications, including pseudotumors, tissue death, and bone degradation. Additionally, exposure to cobalt and chromium ions may cause headaches, cardiac abnormalities, and memory issues, among other neurological problems.

100. DePuy had a duty to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, and as to quality assurance, quality control, and/or distribution of the DePuy Components into the stream of commerce, including a duty to assure that the devices would not cause those who had it surgically implanted to suffer adverse harmful effects.

101. DePuy failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of DePuy Components into interstate commerce in that DePuy knew or should have known that those individuals that had the DePuy Components surgically implanted were at risk for suffering harmful effects from it including but not limited to: partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the devices and with the attendant risks of complications - including risk of death from such further surgery.

102. The negligence of DePuy, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions: negligently designing the DePuy components in a manner which was dangerous to those individuals who had the devices surgically implanted; designing, manufacturing, producing, creating, and/or promoting these devices without adequately, sufficiently, or thoroughly testing them; not conducting sufficient testing programs to determine

- 18 -

whether or not these devices were safe for use; selling the devices without making proper and sufficient tests to determine the dangers to its users; failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably come into contact with, and more particularly, implant these devices into their patients; negligently advertising and recommending the use of these devices despite the fact that DePuy knew or should have known of its dangerous propensities; negligently representing that the devices offered were safe for use, when, in fact, they were unsafe; negligently marketing and promoting the DePuy components for off-label purposes when the devices offered for off-label purposes were unsafe; negligently manufacturing the devices in a manner which was dangerous to those individuals who had it implanted; and, DePuy under-reported, concealed important relevant information, underestimated and downplayed the serious danger of the DePuy Components.

103. DePuy was negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the DePuy Components in that they: failed to use due care in designing and manufacturing the devices so as to avoid the aforementioned risks to individuals that had the devices surgically implanted; failed to accompany their product with proper warnings; failed to accompany their product with proper instructions for use; and, were otherwise careless and/or negligent.

104. Despite the fact that DePuy knew or should have known that the DePuy Components caused harm to individuals that had them surgically implanted, DePuy continued to market, manufacture, distribute and/or sell the DePuy Components for use in an off-label manner.

105. DePuy knew or should have known that consumers such as Plaintiff would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of DePuy's failure to exercise ordinary care, as set forth above.

106. DePuy's negligence in design, testing, distribution, manufacture, advertising, sales, and marketing prior to, on, and after the date of plaintiffs hip implant surgery was a substantial factor in causing Plaintiffs' injuries and damages, as described herein.

107. DePuy's negligence was the legal and proximate cause of Plaintiff's physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to

suffer.

108. By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the past and future need for revision surgeries with the attendant risks of complications and risk of death from such surgery.

109. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

110. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

111. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against the DePuy as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (STRICT PRODUCTS LIABILITY - MANUFACTURING DEFECT)

### (CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, AND DOES 1 – 200, INCLUSIVE.)

112. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

113. Prior to, on, and after the date of Plaintiff's original hip implant surgery, and at all relevant times, DePuy designed, manufactured, tested, marketed and distributed into the stream of commerce the DePuy Components for implantation into consumers, such as Plaintiff, by physicians and

1    surgeons in the United States.

2   114. The DePuy Components surgically implanted in Plaintiff were dangerous, unsafe, and defective in

3       their manufacture when they left the hands of DePuy in that they deviated from product

4       specifications, and they differed from the manufacturer's design or specifications, or from other

5       typical units of the same product line, posing a serious risk that it could fail early in patients

6       therefore giving rise to physical injury, pain and suffering, debilitation, and the need for a revision

7       surgery with the attendant risks of complications and death from such further surgery. Said

8       defects included, but were not limited to the fact that the acetabular cup had a tendency to detach,

9       disconnect, and/or loosen from a patient's acetabulum, cause pain, inhibit walking, and require

10      revision surgery and, friction and wear between the ceramic head and cobalt-chromium metal

11      liner caused large amounts of toxic cobalt-chromium metal ions and particles to be released into

12      Plaintiff's body.

13   115. Plaintiff's physicians employed the DePuy Components in a reasonably foreseeable manner, as

14      DePuy marketed and promoted them to be used together in an off-label manner.

15   116. DePuy's design, manufacture, marketing, promotion, defense, and sale of the DePuy Components

16      were substantial factors in causing Plaintiff's injuries, as described herein.

17   117. As a direct and legal result of DePuy's design, distribution, manufacture, marketing, and sale of

18      the DePuy Components, Plaintiff suffered pain, creation of metallic debris, and/or loosening,

19      infection, inhibition of the ability to walk, unnecessary and additional surgery, and other injuries

20      presently undiagnosed.

21   118. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors,

22      hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and

23      services, which services are still continuing. Plaintiff prays leave to amend this Complaint to

24      insert these elements of damage in this respect when the same are finally determined.

25   119. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular

26      employment, and Plaintiff's earning capacity has been diminished in a presently unascertained

27      sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to

28      insert these elements of damage in this respect when the same are finally determined.

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}

120. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

121. As a direct and proximate result of DePuy's placement of the defective DePuy Components into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery with the attendant risks of complications and death from such further surgery.

122. In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against DePuy as hereinafter set forth.

### THIRD CAUSE OF ACTION

### (STRICT PRODUCTS LIABILITY - DESIGN DEFECT)

### (CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, AND DOES 1 – 200, INCLUSIVE.)

123. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

124. At all times herein mentioned, DePuy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the DePuy Components as herein above described that were surgically implanted in P1aintiff.

125. At all times herein mentioned, the DePuy Components designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed by DePuy were in an unsafe, defective, and inherently dangerous condition, which was dangerous to users such as Plaintiff who had the DePuy Components surgically implanted.

126. At all times herein mentioned, the DePuy Components designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed by DePuy were in an unsafe,

- 22 -

defective, and inherently dangerous condition at the time they left DePuy' possession.

127. At all times herein mentioned, the DePuy Components were expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants.

128. At all times herein mentioned, the DePuy Components' unsafe, defective, and inherently dangerous condition were a cause of injury to Plaintiff.

129. At all times herein mentioned, the DePuy Components failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

130. Plaintiff's injuries resulted from use of the DePuy Components in a manner that was both intended and reasonably foreseeable by DePuy.

131. At all times herein mentioned, the DePuy Components posed a risk of danger inherent in the design which outweighed the benefits of that design.

132. At all times herein mentioned, the DePuy Components were defective and unsafe, and DePuy knew or had reason to know that the devices were defective and unsafe, especially when used in the form and manner as provided by DePuy.

133. DePuy knew, or should have known, that at all times herein mentioned that the DePuy Components were in a defective condition, and was and is inherently dangerous and unsafe.

134. At the time of the implantation of the DePuy Components into Plaintiff, the aforesaid product was being used for the purposes and manner intended or reasonably foreseeable, namely, for use as surgically implanted hip replacement devices.

135. DePuy had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

136. DePuy designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which, when used in its intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiff, and DePuy is therefore strictly liable for injuries sustained by Plaintiff.

137. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors,

hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

138. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and plaintiffs earning capacity has been diminished in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

139. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

140. As a direct and proximate result of DePuy's placement of the defective DePuy Components into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery with the attendant risks of complications and death.

141. In performing the foregoing acts and omissions, DePuy acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

WHEREFORE, Plaintiff, individually and on behalf of the class, requests judgment against defendants as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (STRICT PRODUCTS LIABILITY - FAILURE TO WARN)

### (CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, AND DOES 1 – 200, INCLUSIVE.)

142. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

143. Prior to, on, and after the date of Plaintiff's hip implant surgery, and at all relevant times, DePuy designed, manufactured, tested, marketed, sold, and distributed into the stream of commerce the

- 24 -

DePuy Components for implantation into consumers, such as Plaintiff, by physicians and surgeons in the United States.

144. The DePuy Components had potential risks, side effects and off-label uses that were known or knowable to defendants by the use of scientific knowledge available before, at, and after the time of manufacture, distribution, and sale of each system. DePuy knew or should have known of the defective condition, characteristics, and risks associated with said products, as previously set forth herein.

145. The DePuy Components were in a defective condition that was unreasonably and substantially dangerous to any user or ordinary consumer, such as Plaintiff. Such ordinary consumers, including Plaintiff, would not and could not have recognized or discovered the potential risks and side effects of the DePuy Components as set forth herein. The literature provided with the DePuy Components by Defendants failed to adequately warn of the potential risks and side effects of each system and the dangerous propensities of said medical devices, which risks were known or were reasonably scientifically knowable to Defendants.

146. Defendants' DePuy Components were expected to and did reach Plaintiff and Plaintiff's physicians without substantial change in their condition as manufactured, distributed, and sold by defendants. Additionally, Plaintiff's physicians used the DePuy Components in a manner reasonably foreseeable to DePuy.

147. The DePuy Components placed into the stream of commerce by DePuy were defective due to inadequate warning because DePuy knew or should have known that the DePuy Components could fail early in patients and therefore give rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery with the attendant risks of complications and death from such further surgery, but failed to give consumers adequate warning of such risks. Further, the DePuy Components placed into the stream of commerce by DePuy were surgically implanted in a manner reasonably anticipated by DePuy.

148. DePuy's lack of sufficient instructions or warnings prior to, on, and after the date of Plaintiff's hip implant surgery was a substantial factor in causing Plaintiff's injuries and damages, as described herein. As a direct and legal result of DePuy's manufacture, distribution, and sale of the DePuy

1   Components, Plaintiff suffered the injuries hereinabove described.

2   149. As a direct and proximate result of DePuy's placement of the defective DePuy Components into

3   the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects

4   including but not limited to partial or complete loss of mobility, loss of range of motion, as well as

5   other severe and personal injuries which are permanent and lasting in nature, physical pain and

6   mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery

7   with the attendant risks of complications and death from such further surgery.

8   150. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors,

9   hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and

10   services, which services are still continuing. Plaintiff prays leave to amend this Complaint to

11   insert these elements of damage in this respect when the same are finally determined.

12   151. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular

13   employment, and Plaintiff's earning capacity has been diminished in a presently unascertained

14   sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to

15   insert these elements of damage in this respect when the same are finally determined.

16   152. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum

17   in excess of the minimum jurisdictional limits of this Court.

18   153. In performing the foregoing acts and omissions, DePuy acted despicably, fraudulently, and with

19   malice and oppression so as to justify an award of punitive and exemplary damages.

20   WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against defendants

21   as hereinafter set forth.

22                   **FIFTH CAUSE OF ACTION**

23        **(STRICT PRODUCTS LIABILITY - FAILURE TO ADEQUATELY TEST)**

24   **(CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON**

25   **INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON &**

26                **JOHNSON, AND DOES 1 – 200, INCLUSIVE.)**

27   154. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if

28   fully set forth in this claim.

- 26 -

155. Prior to, on, and after the date of Plaintiff's hip implant surgery, and at all relevant times, DePuy designed, manufactured, tested, marketed, sold, and distributed into the stream of commerce the DePuy Components for implantation into consumers, such as Plaintiff, by physicians and surgeons in the United States.

156. DePuy advised consumers, such as Plaintiff, that the DePuy components were safe and effective components to be used as hip replacement devices.

157. DePuy failed to adequately test the DePuy Components to ensure that the devices were not prone to early failure in patients and that they would not give rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery with the attendant risks of complications and death from such further surgery.

158. If the Defendants had adequately tested the DePuy Components and disclosed the results of those tests to the public, Plaintiff would not have elected to have the DePuy Components surgically implanted into his body.

159. As a direct and proximate result of Defendants' placement of the defective DePuy Components into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery with the attendant risks of complications and death.

160. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

161. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

162. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum

1      in excess of the minimum jurisdictional limits of this Court.

2    163. In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and

3      with malice and oppression so as to justify an award of punitive and exemplary damages.

4    WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against defendants

5    as hereinafter set forth.

6                            **SIXTH CAUSE OF ACTION**

7       **(STRICT PRODUCTS LIABILITY - BREACH OF EXPRESS WARRANTY)**

8   **(CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON**

9     **INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON &**

10             **JOHNSON, AND DOES 1 – 200, INCLUSIVE.)**

11   164. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if

12      fully set forth in this claim.

13   165. DePuy designed, manufactured, tested, marketed and distributed the DePuy Components into the

14      stream of commerce.

15   166. DePuy expressly warranted that the DePuy Components were safe and effective as a hip

16      replacement system.

17   167. The DePuy Components placed into the stream of commerce by DePuy and its agents did not

18      conform to these express representations because they failed early, thereby giving rise to

19      unnecessary physical injury, pain and suffering, debilitation, and the need for revision surgery

20      with the attendant risks of complications and death from further surgery.

21   168. As a direct and proximate result of DePuy's breach of express warranties regarding the safety and

22      effectiveness of the DePuy Components, Plaintiff has suffered or will experience severe harmful

23      effects including but not limited to partial or complete loss of mobility, loss of range of motion, as

24      well as other severe and personal injuries which are permanent and lasting in nature, physical pain

25      and mental anguish, including diminished enjoyment of life, as well as the need for a revision

26      surgery with the attendant risks of complications and death.

27   169. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors,

28      hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}

services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

170. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

171. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

172. In performing the foregoing acts and omissions, DePuy acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of the class, requests judgment against DePuy as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

### (STRICT PRODUCTS LIABILITY - BREACH OF IMPLIED WARRANTY)

### (CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, AND DOES 1 – 200, INCLUSIVE.)

173. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

174. DePuy and its agents designed, manufactured, tested, marketed and distributed the DePuy Components into the stream of commerce.

175. At the time DePuy designed, manufactured, tested, marketed, and distributed the DePuy Components into the stream of commerce, Defendants knew the use for which the DePuy Components were intended and impliedly warranted the DePuy Components to be of merchantable quality and safe for such use.

176. Plaintiff reasonably relied upon the skill and judgment of DePuy as to whether the DePuy Components were of merchantable quality and safe for their intended use.

177. Contrary to DePuy's implied warranties, the DePuy Components were not of merchantable

- 29 -

quality or safe for their intended use, because the DePuy Components were unreasonably dangerous as described above.

178. As a direct and proximate result of DePuy's breach of implied warranties regarding the safety and effectiveness of the DePuy Components, Plaintiff has suffered or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery with the attendant risks of complications and death.

179. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

180. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

181. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

182. In performing the foregoing acts and omissions, DePuy acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of the class, requests judgment against DePuy as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

## (FRAUD - INTENTIONAL MISREPRESENTATION)

## (CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, AND DOES 1 – 200, INCLUSIVE.)

183. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if

1   fully set forth in this claim.

2   184. DePuy made representations to Plaintiff and his physicians that the DePuy Components were a

3   high-quality, safe and effective hip replacement system.

4   185. DePuy and its agents knowingly and intentionally represented to Plaintiff, Plaintiff's healthcare

5   providers, and the public that the DePuy Components were safe for use and that Defendants'

6   marketing and promotional materials fully described all known risks associated with the use of the

7   DePuy Components as a system. These representations were of facts that were material and

8   important to Plaintiff's decision to use the DePuy Components.

9   186. DePuy's knowing and intentional misrepresentations of material facts that were false include,

10   without limitation: that the DePuy Components were safer or more effective than other hip

11   implant systems; that the DePuy Components were suitable for younger, more active people; and

12   that the DePuy Components were safe and effective for all patients.

13   187. DePuy's representations were false. The DePuy Components were not safe for use, and DePuy's

14   marketing and promotional materials did not fully describe all known risks of the products.

15   188. Before they marketed and promoted the DePuy Components for use together as a system, DePuy

16   knew or should have known of the unreasonable dangers and serious health risks that such a

17   ceramic-on-metal total hip replacement system posed to patients like Plaintiff, particularly as the

18   DePuy Components had not received FDA approval for use together as a hip replacement system.

19   189. As specifically described in detail above, DePuy knew that the DePuy Components subjected

20   patients to early failure, painful and harmful physical reactions to toxic metallic particles and ions,

21   death of tissue, bone loss and the need for explants and revision surgeries.

22   190. DePuy's representations to Plaintiff and his physicians that the DePuy Components were high-

23   quality, safe and effective were false and knowingly false.

24   191. When DePuy made theses representations, DePuy either knew that such representations were false

25   or made said representations recklessly and without regard for their truth.

26   192. When DePuy made these representations, DePuy intended that Plaintiff and Plaintiff's healthcare

27   providers would rely on such representations.

28   193. DePuy concealed its knowledge of the unreasonable risks and dangers associated with the use of

- 31 -

the DePuy Components to induce Plaintiff and many others to purchase the devices for surgical implantation in their bodies.

194. Plaintiff did not know of the falsity of DePuy's statements regarding the DePuy Components.

195. Plaintiff reasonably and justifiably relied on DePuy's representations that the DePuy Components were safe for use and that each system's labeling, marketing, and promotional materials fully described all known risks associated with the DePuy Components, and relied upon and accepted as truthful DePuy's representations regarding the DePuy Components.

196. Plaintiff had a right to rely on DePuy's representations and in fact did rely upon such representations. Had Plaintiff known that the DePuy Components would fail early and expose him to the unreasonable risk of toxic metals, continuing pain, and revision surgery, he would not have purchased or allowed the DePuy Components to have been surgically implanted in him.

197. As a result of these false representations, Plaintiff suffered the injuries and damages described herein.

198. As a direct and proximate result of DePuy's fraudulent representations regarding the safety and effectiveness of the DePuy Components, Plaintiff has suffered or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery with the attendant risks of complications and death.

199. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

200. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

201. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum

- 32 -

1    in excess of the minimum jurisdictional limits of this Court.

2    202.  In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and

3           with malice and oppression so as to justify an award of punitive damages.

4    WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against DePuy as

5    hereinafter set forth.

6                                **NINTH CAUSE OF ACTION**

7                            **(NEGLIGENT MISREPRESENTATION)**

8    **(CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON**

9    **INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON &**

10                    **JOHNSON, AND DOES 1 – 200, INCLUSIVE.)**

11   203.  Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if

12           fully set forth in this claim.

13   204.  DePuy made representations to Plaintiff and his physicians that the DePuy Components were a

14           high-quality, safe and effective hip replacement system.

15   205.  DePuy knowingly and intentionally represented to Plaintiff, Plaintiff's healthcare providers, and

16           the public that the DePuy Components were safe for use and that DePuy marketing and

17           promotional materials fully described all known risks associated with the use of the DePuy

18           Components as a system. These representations were of facts that were material and important to

19           Plaintiff's decision to use the DePuy Components.

20   206.  DePuy's knowing and intentional misrepresentations of material facts that were false include,

21           without limitation: that the DePuy Components were safer or more effective than other hip

22           implant systems; that the DePuy Components were suitable for younger, more active people; and

23           that the DePuy Components were safe and effective for all patients.

24   207.  DePuy's representations were false. The DePuy Components were not safe for use, and DePuy's

25           marketing and promotional materials did not fully describe all known risks of the products.

26   208.  Before they marketed and promoted the DePuy Components for use together as a system, DePuy

27           knew or should have known of the unreasonable dangers and serious health risks that such a

28           ceramic-on-metal total hip replacement system posed to patients like Plaintiff, particularly as the

- 33 -

DePuy Components had not received FDA approval for use together as a hip replacement system.

209. As specifically described in detail above, DePuy knew that the DePuy Components subjected patients to early failure, painful and harmful physical reactions to toxic metallic particles and ions, death of tissue, bone loss and the need for explants and revision surgeries.

210. DePuy's representations to Plaintiff and his physicians that the DePuy Components were high-quality, safe and effective were false and knowingly false.

211. When DePuy made theses representations, DePuy either knew that such representations were false or made said representations recklessly and without regard for their truth.

212. Although DePuy may have honestly believed that the representations were true, DePuy had no reasonable grounds for believing the representations were true at the time they made the representations.

213. When DePuy made these representations, DePuy intended that Plaintiff and Plaintiff's healthcare providers would rely on such representations.

214. Plaintiff did not know of the falsity of DePuy's statements regarding the DePuy Components.

215. Plaintiff reasonably and justifiably relied on DePuy's representations that the DePuy Components were safe for use and that each system's labeling, marketing, and promotional materials fully described all known risks associated with the DePuy Components, and relied upon and accepted as truthful DePuy's representations regarding the DePuy Components.

216. Plaintiff had a right to rely on Defendants' representations and in fact did rely upon such representations. Had Plaintiff known that the DePuy Components would fail early and expose him to the unreasonable risk of toxic metals, continuing pain, and revision surgery, he would not have purchased or allowed the DePuy Components to have been surgically implanted in him.

217. As a result of these false representations, Plaintiff suffered the injuries and damages described herein.

218. As a direct and proximate result of DePuy's misrepresentations regarding the safety and effectiveness of the DePuy Components, Plaintiff has suffered or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain

- 34 -

and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery with the attendant risks of complications and death.

219. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

220. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

221. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

222. In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against DePuy as hereinafter set forth.

## TENTH CAUSE OF ACTION

### (FALSE ADVERTISING - BUSINESS & PROFESSIONS CODE § 17500)

### (CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, AND DOES 1 – 200, INCLUSIVE.)

223. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

224. DePuy disseminated misleading and deceptive advertisements and marketing materials to Plaintiff and his physicians claiming that the DePuy Components were a high-quality, safe and effective hip replacement system.

225. The misleading and deceptive advertisements and marketing materials deceived Plaintiff and other members of the public.

- 35 -

226. DePuy's misleading and deceptive advertisements and marketing materials included claims, without limitation: that the DePuy Components were safer or more effective than other hip implant systems; that the DePuy Components were suitable for younger, more active people; and that the DePuy Components were safe and effective for all patients.

227. DePuy's advertisements were false. The DePuy Components were not safe for use, and DePuy's advertising, marketing and promotional materials did not fully describe all known risks of the products.

228. Before they advertised, marketed and promoted the DePuy Components for use together as a system, DePuy knew or should have known of the unreasonable dangers and serious health risks that such a ceramic-on-metal total hip replacement system posed to patients like Plaintiff, particularly as the DePuy Components had not received FDA approval for use together as a hip replacement system.

229. As specifically described in detail above, DePuy knew that the DePuy Components subjected patients to early failure, painful and harmful physical reactions to toxic metallic particles and ions, death of tissue, bone loss and the need for explants and revision surgeries.

230. DePuy's advertisements, marketing and promotion to Plaintiff and his physicians that the DePuy Components were high-quality, safe and effective were false and knowingly false.

231. When DePuy disseminated these advertising and marketing materials, DePuy either knew that such representations were false or disseminated these materials recklessly and without regard for their truth.

232. When DePuy made these advertisements and marketing materials, DePuy intended to induce Plaintiff and Plaintiff's healthcare providers into using the DePuy Components.

233. Plaintiff had a right to rely on DePuy's advertisements and marketing materials, and in fact did rely upon such representations. Had Plaintiff known that the DePuy Components would fail early and expose him to the unreasonable risk of toxic metals, continuing pain, and revision surgery, he would not have purchased or allowed the DePuy Components to have been surgically implanted in him.

234. As a result of these false representations, Plaintiff suffered the injuries and damages described

1   herein.

2   235. As a direct and proximate result of DePuy's false advertisements regarding the safety and

3         effectiveness of the DePuy Components, Plaintiff has suffered or will experience severe harmful

4         effects including but not limited to partial or complete loss of mobility, loss of range of motion, as

5         well as other severe and personal injuries which are permanent and lasting in nature, physical pain

6         and mental anguish, including diminished enjoyment of life, as well as the need for a revision

7         surgery with the attendant risks of complications and death.

8   WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against defendants

9   as hereinafter set forth.

10                          **ELEVENTH CAUSE OF ACTION**

11          **(VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT  - CALIFORNIA**

12                              **CIVIL CODE § 1750)**

13   **(CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON**

14       **INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON &**

15                     **JOHNSON, AND DOES 1 – 200, INCLUSIVE.)**

16   236. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if

17         fully set forth in this claim.

18   237. Plaintiff is informed and believes and thereon alleges that DePuy, by the acts and misconduct

19         alleged herein, violated the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et. seq.

20         ("CLRA").

21   238. Plaintiff hereby seeks injunctive relief as appropriate against DePuy for its violations of Cal. Civ.

22         Code § 1750 et. seq. The CLRA applies to DePuy's actions and conduct described herein because

23         it extends to transactions which are intended to result, or which have resulted, in the sale of goods

24         to consumers.

25   239.  Plaintiff is a "consumer" within the meaning of Cal. Civ. Code § 1761(d) (West).

26   240. DePuy has violated, and continued to violate, the CLRA in representing that goods have

27         characteristics and benefits which they do not have in violation of Cal. Civ. Code § 1770(a)(5).

28   241. At all times herein alleged DePuy has committed acts of disseminating untrue and misleading

Complaint — *Muldoon v. Dodgin, et al.*
{00149439;1}

statements as defined by Cal. Civ. Code § 1770 by engaging in the following acts and practices with the intent to induce members of the public, including healthcare providers, to purchase and use the DePuy Components. These acts include but are not limited to:

   a. Representing to Plaintiff, Plaintiff's physicians, and the general public that the DePuy Components were safe, fit, and effective for human use, knowing that said representations were false, and concealing from Plaintiff, and the general public that the DePuy Components had a serious propensity to cause injuries to users, including an unacceptably high failure rate; and

   b. Purposely downplaying and understating the risks associated with the DePuy Components.

242. The foregoing practices constitute false and misleading advertising and representations within the meaning of Cal. Civ. Code § 1770.

243. As a direct and proximate result of DePuy's false and misleading advertising and representations regarding the safety and effectiveness of the DePuy Components, Plaintiff has suffered or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery with the attendant risks of complications and death.

244. In performing the foregoing acts and omissions, DePuy acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages under Civ. Code § 1780.

WHEREFORE, Plaintiff, individually and on behalf of the class, judgment against defendants as hereinafter set forth.

**TWELFTH CAUSE OF ACTION**

**(VIOLATION OF THE UNFAIR COMPETITION LAW - CALIFORNIA CIVIL CODE § 17200)**

**(CLASS AGAINST DEPUY ORTHOPAEDICS, INC., DEPUY, INC., JOHNSON & JOHNSON INTERNATIONAL, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, AND DOES 1 – 200, INCLUSIVE.)**

- 38 -

245. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

246. Plaintiff brings this cause of action pursuant to Cal. Bus. & Prof. Code § 17204 , in Plaintiff's individual capacity, and not on behalf of the general public.

247. Cal. Bus. & Prof. Code § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

248. The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of Cal. Bus. & Prof. Code § 17200.

249. The acts of untrue and misleading advertising are, by definition, violations of Cal. Bus. & Prof. Code § 17200. This conduct includes, but is not limited to:

a. Representing to Plaintiff, Plaintiff's healthcare providers and the general public that the DePuy Components were safe, fit, and effective for human use, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's healthcare providers, and the general public that the DePuy Components had a serious propensity to fail early which would cause injuries to Plaintiff;

b. Failing to disclose that the DePuy Components could fail early and thereby give rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the devices with attendant risks of further surgery, such as complications and death; and

c. Purposely downplaying and understating the risks associated with the DePuy Hip Implant Systems.

250. These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of Cal. Bus. & Prof. Code § 17200, as well as unfair, deceptive, untrue and misleading advertising as prohibited by Cal. Bus. & Prof. Code § 17500.

251. As a result of their conduct described above, DePuy has been and will be unjustly enriched. Specifically, DePuy has been unjustly enriched by receipt of ill-gotten gains from the sale of the

- 39 -

1   DePuy Hip Implant Systems, sold in large part as a result of the acts and omissions described

2   herein.

3   252.   Because of fraudulent misrepresentations made by DePuy as detailed above, and the inherently

4   unfair practice of committing a fraud against the public by intentionally misrepresenting and

5   concealing material information, the acts of DePuy described herein constitute unfair or

6   fraudulent business practices.

7   253.   Plaintiff, pursuant to Cal. Bus. & Prof. Code § 17203 , seeks an order of this court compelling

8   DePuy to provide restitution, and injunctive relief calling for DePuy to cease unfair business

9   practices in the future.

10   254.   As a direct and proximate result of DePuy's false and misleading advertising and representations

11   regarding the safety and effectiveness of the DePuy Components, Plaintiff has suffered significant

12   damages, including but not limited to physical injury, economic loss, pain and suffering, and the

13   need for past revision surgery to replace the faulty devices, and will continue to suffer such

14   damages in the future.

15   WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against DePuy as

16   hereinafter set forth.

## THIRTHEENTH CAUSE OF ACTION

## CIVIL RICO

## (CLASS AGAINST ALL DEFENDANTS)

20   255.   Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if

21   fully set forth in this claim.

22   256.   Plaintiff is informed and believes and thereon alleges that Defendants, acting through its

23   employees, conspired to violate and/or did violate 18 U.S.C. § 1962 (c) and (d).   Said RICO

24   Defendants conspired to create and/or did create an enterprise engaged in the activities of which

25   affected interstate commerce including mail fraud and wire fraud through a pattern of racketeering

26   activity.

27   257.   Said predicate acts include but are not limited to the following unfair, unlawful and fraudulent

28   misrepresentations:  (a) representing to Plaintiff, Plaintiff's healthcare providers and the general

- 40 -

public that the DePuy Components were safe, fit, and effective for human use, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's healthcare providers, and the general public that the DePuy Components had a serious propensity to fail early which would cause injuries to Plaintiff; (b) failing to disclose that the DePuy Components could fail early and thereby give rise to unnecessary pain and suffering, debilitation, and the need for a revision surgery to replace the devices with attendant risks of further surgery, such as complications and death; and (c) purposely downplaying and understating the risks associated with the DePuy Hip Implant Systems.

258. Said predicate acts also include but are not limited to the following unlawful and fraudulent acts: (a) DePuy offered, and Dr. Dodgin accepted, financial incentives in exchange for using a non-FDA approved configuration of DePuy products in Plaintiff's hip replacement surgery; and (b) DePuy bribed surgeons to research and experiment with the DePuy Components on unwitting patients.

259. Plaintiffs are informed and believe and thereon allege that each of the RICO Defendants knowingly engaged in at least two predicate acts of racketeering activity and such acts occurred over a period of greater than six (6) months were part of Defendants' regular way of doing business.  The victims of said racketeering included, but were not limited to, Plaintiff and the Class.

260. Plaintiffs are informed and believe and thereon allege that the RICO Defendants' racketeering acts were not isolated events but were related to each other in that: (a) they were directed at the aforesaid victims, and (b) were directed at numerous other victims using the same or similar methods.

261. The fraudulent scheme alleged herein was perpetrated using wires and the U.S. Mail.

262. As a direct and proximate result of the RICO Defendants' fraudulent scheme/racketeering activity as aforesaid, Plaintiffs have been damaged.  Plaintiffs are entitled to treble damages, attorney's fees, costs, and other remedies pursuant to 18 U.S.C. § 1964 .

263. Plaintiffs are informed and believe and thereon allege, that the acts and conduct of the said RICO Defendants, and each of them, described herein were done with a conscious disregard of

1  Plaintiffs' rights and with a specific intent to defraud and injure Plaintiffs, such as to constitute

2  fraud, oppression and malice entitling plaintiff to punitive and exemplary damages as determined

3  by the Court.  As to each corporate RICO Defendant named in the cause of action, the aforesaid

4  conduct (a) was committed by one or more of its officers, directors, or managing agents, who

5  acted on its behalf, (b) was authorized by one or more of its officers, directors or managing

6  agents, and/or (c) one or more of its officers, directors or managing agents knew of the aforesaid

7  scheme and conduct and adopted, ratified, or approved the scheme and conduct before and after it

8  occurred.

9  ### FOURTEENTH CAUSE OF ACTION

10  ### (MEDICAL MALPRACTICE - NEGLIGENCE)

11  ### (SUB-CLASS AGAINST DEFENDANTS DR. DODGIN AND JOHN MUIR HEALTH)

12  264. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if

13  fully set forth in this claim.

14  265. Dr. Dodgin owed Plaintiff a duty: to have the degree of learning and skill ordinarily possessed by

15  surgeons in the same or similar locality, under similar circumstances; to use the same degree of

16  skill and care usually exercised by practitioners for the medical profession in the same or similar

17  locality, under similar circumstances; and, to use reasonable diligence in the application of the

18  physician's learning and skill.

19  266. John Muir Health owed Plaintiff a duty to use reasonable care in providing services to Plaintiff,

20  and in ensuring the competence of its staff and employees.

21  267. Defendant Dr. Dodgin breached his duty to Plaintiff by surgically implanting the DePuy

22  Components into Plaintiff. Dr. Dodgin failed to use the same degree of knowledge, skill and care

23  usually exercised by surgeons in the same or similar locality, under similar circumstances by

24  implanting the DePuy Components, a non-FDA approved system, into Plaintiff.

25  268. Had Dr. Dodgin used the knowledge, skill and care usually exercised by surgeons in the same or

26  similar locality, under similar circumstances, Plaintiff would not have been injured by the DePuy

27  Components.

28  269. Dr. Dodgin's negligence was the proximate cause of Plaintiff's physical, mental and emotional

- 42 -

injuries and harm, and economic loss which he has suffered and/or will continue to suffer.

270. By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the past and future need for revision surgeries with the attendant risks of complications and risk of death from such surgery.

271. As a direct and legal result of the above described negligence, Plaintiff suffered the injuries herein described.

272. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

273. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished to Plaintiff's special damage in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

274. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, Plaintiff, individually and on behalf of the Sub-Class, requests judgment against Defendants Dr. Dodgin and John Muir Health as hereinafter set forth.

## FIFTEENTH CAUSE OF ACTION

## (NEGLIGENT SUPERVISION)

## (SUB-CLASS AGAINST DEFENDANT JOHN MUIR HEALTH)

275. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

276. Plaintiff is informed and believes and on that basis alleges that, when engaging in the wrongful conduct alleged in Causes of Action fourteen (14) through eighteen (18), John Muir Health knew

- 43 -

1  or reasonably should have known that Dr. Dodgin was engaging in the wrongful conduct alleged

2  therein, and that this conduct would directly and proximately result in injury to Plaintiff.

3  277. John Muir Health had the authority to supervise, prohibit, control, and/or regulate Dr. Dodgin so

4  as to prevent these acts and omissions from occurring.

5  278. John Muir Health knew or reasonably should have known that unless it intervened to protect

6  Plaintiff and properly supervise, prohibit, control, and/or regulate the conduct of Dr. Dodgin, that

7  Dr. Dodgin would perceive his acts and omissions as being ratified and condoned.

8  279. John Muir Health failed to exercise due care by failing to supervise, prohibit, control, or regulate

9  Dr. Dodgin and/or by failing to protect Plaintiff.

10  280. As a direct and proximate result of the above described negligent supervision, Plaintiff suffered

11  the injuries herein described.

12  281. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors,

13  hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and

14  services, which services are still continuing. Plaintiff prays leave to amend this Complaint to

15  insert these elements of damage in this respect when the same are finally determined.

16  282. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular

17  employment, and Plaintiff's earning capacity has been diminished to Plaintiff's special damage in

18  a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to

19  amend this Complaint to insert these elements of damage in this respect when the same are finally

20  determined.

21  283. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum

22  in excess of the minimum jurisdictional limits of this Court.

23  WHEREFORE, Plaintiff, individually and on behalf of the Sub-Class, requests judgment against

24  Defendants Dr. Dodgin and John Muir Health as hereinafter set forth.

25  <u>**SIXTEENTH CAUSE OF ACTION**</u>

26  <u>**(MEDICAL MALPRACTICE - LACK OF INFORMED CONSENT)**</u>

27  <u>**(SUB-CLASS AGAINST DEFENDANTS DR. DODGIN AND JOHN MUIR HEALTH)**</u>

28  284. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if

- 44 -

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}

1    fully set forth in this claim.

2    285. Dr. Dodgin represented in his surgical notes in December 2006 that he intended to use a metal-on-
3         metal configuration of DePuy devices for Plaintiff's surgery and that Plaintiff had been informed
4         in a consented manner.

5    286. At some point before January 3, 2007, Dr. Dodgin changes the surgical plan to a ceramic-on-
6         metal configuration of DePuy devices.

7    287. Dr. Dodgin did not inform Plaintiff about the risks and potential benefits of a metal-on-metal
8         configuration or a ceramic-on-metal configuration of prosthetic medical devices used in hip
9         replacement surgeries. Nor did Dr. Dodgin inform Plaintiff about alternative implants.

10   288. Dr. Dodgin breached his duty to Plaintiff to act reasonably by failing to inform Plaintiff in a
11        consented manner.

12   289. Dr. Dodgin knew or should have known that Plaintiff would suffer foreseeable injury, and/or be at
13        increased risk of suffering injury as a result of his failure to act as a reasonable physician.

14   290. Plaintiff, had Dr. Dodgin informed Plaintiff in a consented manner before the events set forth in
15        the Complaint, would not have consented to an invasive surgical procedure utilizing a non-FDA
16        approved configuration of DePuy devices from a physician receiving financial compensation from
17        DePuy.

18   291. Dr. Dodgin's failure to inform Plaintiff in a consented manner was the proximate cause of
19        Plaintiff's physical, mental and emotional injuries and harm, and economic loss which he has
20        suffered and/or will continue to suffer.

21   292. By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects
22        including but not limited to partial or complete loss of mobility, loss of range of motion, as well as
23        other severe and personal injuries which are permanent and lasting in nature, physical pain and
24        mental anguish, including diminished enjoyment of life, as well as the past and future need for
25        revision surgeries with the attendant risks of complications and risk of death from such surgery.

26   293. As a direct and legal result thereof, it became necessary for Plaintiff to incur expenses for doctors,
27        hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and
28        services, which services are still continuing. Plaintiff prays leave to amend this Complaint to

insert these elements of damage in this respect when the same are finally determined.

294. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished to Plaintiffs special damage in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

295. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, Plaintiff, individually and on behalf of the Sub-Class, requests judgment against Defendants Dr. Dodgin and John Muir Health as hereinafter set forth.

## SEVENTEENTH CAUSE OF ACTION

### (BREACH OF FIDUCIARY DUTY)

### (SUB-CLASS AGAINST DEFENDANTS DR. DODGIN AND JOHN MUIR HEALTH)

296. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

297. As Plaintiff's physician, Dr. Dodgin was bound to act with the utmost good faith for the benefit of Plaintiff. Dr. Dodgin represented himself as a skilled orthopedic surgeon and agreed to surgically repair Plaintiff's hip, and Plaintiff placed his confidence in Dr. Dodgin

298. A fiduciary relationship existed between Plaintiff and Dr. Dodgin.

299. Dr. Dodgin breached his fiduciary duty by accepting financial incentives from DePuy in exchange for utilizing DePuy's products. Dr. Dodgin prioritized his own financial gain above the health and safety of Plaintiff.

300. Dr. Dodgin further breached his fiduciary duty by not only accepting these financial inducements from DePuy, but also by failing to inform or receive consent from Plaintiff regarding these financial inducements before surgically implanting DePuy products into Plaintiff's body.

301. Despite the fact that Dr. Dodgin had a duty to inform Plaintiff of DePuy's payments to Dr. Dodgin in exchange for use of their products, Dr. Dodgin hid this information from Plaintiff.

302. Plaintiff, had Dr. Dodgin informed Plaintiff in a consented manner before the events set forth in

- 46 -

the Complaint, would not have consented to an invasive surgical procedure utilizing a non-FDA approved configuration of DePuy devices from a physician receiving financial compensation from DePuy.

303. Dr. Dodgin's breach of fiduciary duty was the proximate cause of Plaintiffs physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer.

304. By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the past and future need for revision surgeries with the attendant risks of complications and risk of death from such surgery.

305. As a direct and legal result of the above described breach of fiduciary duty, Plaintiff suffered the injuries herein described.

306. As a direct and legal result thereof, it became necessary for plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

307. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished to Plaintiffs special damage in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

308. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

WHEREFORE, Plaintiff, individually and on behalf of the Sub-Class, requests judgment against Defendants Dr. Dodgin and John Muir Health as hereinafter set forth.

//

//

- 47 -

## EIGHTEENTH CAUSE OF ACTION

## (BATTERY)

### (SUB-CLASS AGAINST DEFENDANTS DR. DODGIN AND JOHN MUIR HEALTH)

309.  Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1 through 94 as if fully set forth in this claim.

310.  Dr. Dodgin intentionally surgically implanted the DePuy Components into Plaintiff.

311.  Dr. Dodgin did not inform Plaintiff about the risks and potential benefits of a metal-on-metal configuration or a ceramic-on-metal configuration of prosthetic medical devices used in hip replacement surgeries. Nor did Dr. Dodgin inform Plaintiff about alternative implants or non-surgical options.

312.  Dr. Dodgin failed to inform Plaintiff that he received financial incentives from DePuy in exchange for implanting DePuy products into patients.

313.  Plaintiff did not consent to an invasive surgical procedure utilizing a non-FDA approved configuration of DePuy devices from a physician receiving financial compensation from DePuy because he was never informed of these facts.

314.  The surgical implantation of the DePuy Components into Plaintiff's hip was the proximate cause of Plaintiffs physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer.

315.  By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the past and future need for revision surgeries to replace the devices with the attendant risks of complications and risk of death from such surgery.

316.  As a direct and legal result of the above described battery, Plaintiff suffered the injuries herein described.

317.  As a direct and legal result thereof, it became necessary for plaintiff to incur expenses for doctors, hospitals, surgeries, nurses, and other reasonably required and medically necessary supplies and

- 48 -

services, which services are still continuing. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

318. As a direct and legal result thereof, Plaintiff has been unable at times to attend regular employment, and Plaintiff's earning capacity has been diminished to Plaintiffs special damage in a presently unascertained sum as said loss is not yet finally determined. Plaintiff prays leave to amend this Complaint to insert these elements of damage in this respect when the same are finally determined.

319. As a direct and legal result thereof, Plaintiff has suffered and sustained general damages in a sum in excess of the minimum jurisdictional limits of this Court.

320. In performing the foregoing acts and omissions, Dr. Dodgin acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

WHEREFORE, Plaintiff, individually and on behalf of the Sub-Class, requests judgment against Defendants Dr. Dodgin and John Muir Health as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of the class, prays for judgment in favor of Plaintiff and the class and against all Defendants, for damages in such amounts as may be proven at trial, as follows:

1. Compensation for all economic and non-economic losses incurred, including but not limited to past and future medical expenses, past and future loss of earnings, disfigurement, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial, which damages are in excess of this court's $5,000,000.00 jurisdictional minimum;

2. Punitive and/or exemplary damages in such amounts as may be proven at trial;

3. Pre-judgment and post-judgment interest as allowed by law;

4. Costs of suit incurred herein;

5. Reasonable attorneys' fees incurred as may be allowed by law;

6. Such other and further relief as the Court deems just and proper

//
//

Complaint — Muldoon v. Dodgin, et al.
{00149439;1}

1    DATED: June 17, 2015                          _____/s/_____.
                                                   Drexel A. Bradshaw, Esq.
2                                                  Attorney for Plaintiff

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Complaint — Muldoon v. Dodgin, et al.*
{00149439;1}