UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MULDOON,<br>          Plaintiff,<br>     v.<br>DEPUY ORTHOPAEDICS, INC., et al.,<br>          Defendants. | Case No. 15-cv-02723-PJH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DODGIN'S MOTION TO DISMISS AND STRIKE**<br><br>Re: Dkt. No. 50 |

Before the court is defendant Dr. David Dodgin, M.D.'s motion to dismiss and strike. Dkt. 50. The matter is fully briefed and suitable for decision without oral argument. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This action was filed by plaintiff John Muldoon on June 17, 2015. Dkt. 1. The operative Second Amended Complaint ("SAC", Dkt. 42) alleges eighteen (18) causes of action against numerous defendants, all related to damages plaintiff alleges he suffered from his hip-replacement surgery conducted in 2007. The named defendants are Dr. David Dodgin, M.D. (the surgeon who performed the hip implant procedure in 2007), John Muir Health (the facility at which the 2007 procedure was performed), and defendants responsible for producing and/or manufacturing the hip components that were used: DePuy, Inc., Johnson & Johnson International, Inc., Johnson & Johnson Services, Inc., and Johnson & Johnson and Medical Device Business Services, Inc. f/k/a DePuy Orthopaedics, Inc. (together, "DePuy" or the "DePuy defendants").

On January 19, 2024, defendant Dodgin filed the instant motion to dismiss certain claims and to strike portions of the complaint. Dkt. 50. On February 29, plaintiff opposed the motion. Opp., Dkt. 64. On March 7, Dodgin filed his reply. Dkt. 68.

The SAC alleges the following causes of action: (1) negligence against DePuy defendants; (2) strict product liability, manufacturing defect against DePuy defendants; (3) strict product liability, design defect against DePuy defendants; (4) strict product liability, failure to warn against DePuy defendants; (5) strict product liability, failure to test against DePuy defendants; (6) strict product liability, breach of express warranty against DePuy defendants; (7) strict product liability, breach of implied warranty against DePuy defendants; (8) fraud, intentional misrepresentation against DePuy defendants; (9) negligent misrepresentation against DePuy defendants; (10) false advertising against DePuy defendants; (11) violation of consumer legal remedies act against DePuy defendants; (12) violation of unfair competition law against DePuy defendants; (13) civil RICO against all defendants; (14) negligence, medical malpractice against Dodgin and John Muir; (15) negligent supervision against John Muir; (16) medical malpractice, lack of informed consent against Dodgin and John Muir; (17) breach of fiduciary duty against Dodgin and John Muir; and (18) battery against Dodgin and John Muir.

Dodgin moves to dismiss Claims 13, 14, and 18 as alleged against him. He does not move to dismiss Claims 16 or 17.

**A.    Procedural Background**

On June 17, 2015, plaintiff brought this case as a class action. With motions to dismiss pending by Dodgin and John Muir, the lawsuit was removed to the Multi-District Litigation (MDL) in Texas and stayed. Dkt. 21. The case was remanded back to this court in January 2023. Dkt. 26. Plaintiff filed the SAC on July 14, 2023, eliminating the class action allegations. Dkt. 42.

**B.    Factual Background**

When considering this motion to dismiss, the court recounts facts as alleged in the operative complaint. John Muldoon presented to John Muir Medical Center, Concord

2

1  Campus on January 3, 2007 to undergo a left total hip arthroplasty performed by Dodgin.
2  SAC ¶¶ 17–18.  During the surgery, Dodgin implanted a prosthetic medical device
3  system which contained a ceramic-on-metal bearing surface consisting of components
4  manufactured by DePuy.  Id. ¶ 19.

5  At some point after plaintiff's January 2007 surgery, but unbeknownst to him,
6  friction and wear between the ceramic head and cobalt-chromium metal liner began to
7  cause toxic cobalt-chromium metal ions and particles to be released into his body,
8  causing him various injuries.  Id. ¶ 21.

9  In August of 2014, Muldoon was evaluated by Louay Toma, M.D. for complaints
10  related to his hip.  Toma recommended and reviewed an MRI of the left hip and
11  recommended revision surgery to remove the implanted ceramic-on-metal bearing
12  surface.  Id. ¶ 23.  On October 15, 2014, Toma performed a revision surgery on plaintiff
13  and replaced the ceramic-on-metal device with a ceramic-on-plastic one.  Id. ¶ 25.

14  Plaintiff contends that the original ceramic-on-metal implant caused him injuries
15  and that the DePuy defendants knew it was likely that the hip implant would fail early
16  necessitating revision surgeries.  Plaintiff also alleges DePuy entered into relationships
17  with orthopedic surgeons, such as Dodgin, to incentivize surgeons to use their hip
18  implants while concealing the risk of early failure of the device.

19  **DISCUSSION**
20  **A.    Legal Standard**
21      **1.    Motion to Dismiss**
22  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the
23  legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191,
24  1199–1200 (9th Cir. 2003).  A complaint may be dismissed if the plaintiff fails to state a
25  cognizable legal theory or has not alleged sufficient facts to support a cognizable legal
26  theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

27  While the court is to accept as true all the factual allegations in the complaint,
28  legally conclusory statements, not supported by actual factual allegations, need not be

accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679.

Because certain of plaintiffs' claims sound in fraud, those claims must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake.  To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotation marks omitted).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint and no party questions the authenticity of the document. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may also consider matters that are properly the subject of judicial notice.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001).

If dismissal is warranted, it is generally without prejudice unless it is clear that the complaint could not be saved by any amendment.  Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991).  "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

**2.     Motion to Strike**

4

1    Rule 12(f) provides that the "court may strike from a pleading an insufficient
2 defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.
3 P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and
4 money that must arise from litigating spurious issues by dispensing with those issues
5 prior to trial". Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

6 **B.  Analysis**

7    Plaintiff asserts Claims 13, 14, 16, 17, and 18 against Dodgin. Dodgin moves to
8 dismiss Claims 13, 14, and 18 as alleged against him.

9    Plaintiff opposes Dodgin's motion. However, plaintiff's opposition fails to comply
10 with this court's rules governing filings. Civil Local Rules 7-3(a) and 7-4(b) limit
11 oppositions to 25 pages. Civ. L.R. 7-3(a) & 7-4(b). If a party needs additional pages, it
12 must file a motion for administrative relief pursuant to Local Rule 7-11. Excessively long
13 filings may have portions that exceed the page limit stricken from the docket. See, e.g.,
14 Lemoon v. California Forensic Med. Grp., Inc., 575 F. Supp. 3d 1212, 1229 (N.D. Cal.
15 2021) ("the court STRIKES the portion of the CFMG defendants' reply brief that exceeds
16 10 pages"). Here, plaintiff's opposition extends over 32 pages of substantive text
17 (excluding the table of contents, table of authorities, etc.). The court notes that this is not
18 an isolated incident. Plaintiff's opposition to another defendant's motion to dismiss is 52
19 pages—more than double the permitted length. See Dkt. 66. In the absence of a
20 request to file an over long brief or even an acknowledgment of the local rule violation,
21 the court would generally strike those additional pages beyond 25. However, given the
22 absence of an objection from defendant and the far more egregious violation reflected in
23 the remaining motion, the court will not strike these additional seven pages. Accordingly,
24 the court strongly admonishes plaintiff to adhere to the Civil Local Rules in all future
25 filings, or the court will summarily strike any offending portions of such filings.

26    **1.    Claim 13:  RICO**

27    Dodgin argues that plaintiff (a) lacks statutory standing to assert a Racketeer
28 Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO") claim and

5

1  (b) has failed to allege predicate acts as to Dodgin.

### a. RICO's Statutory Standing Requirement

Defendant argues that RICO claims may not be brought for redress for personal injuries, but instead require injury to business or property. This argument is sometimes referred to as RICO's "statutory standing" requirement. Plaintiff argues that his allegations of harm sufficiently allege harm to his business and property. Opp. at 29–30.

#### i. Legal Standard

Under RICO, "[a]ny person **injured in his business or property** by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court". 18 U.S.C. § 1964(c) (emphasis added).

"[T]o establish statutory standing pursuant to RICO, a plaintiff must show . . . that his alleged harm qualifies as injury to his business or property". Shulman v. Kaplan, 58 F.4th 404, 410 (9th Cir. 2023) (internal quotation marks omitted). "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005) (en banc); Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc., 76 F.4th 1266, 1274 (9th Cir. 2023) ("plaintiff must demonstrate (1) harm to a specific property interest cognizable under state law, and (2) that the injury resulted in 'concrete financial loss'") (citation omitted); City of Almaty v. Khrapunov, 956 F.3d 1129, 1132 (9th Cir. 2020) ("To state a claim under RICO, a plaintiff is required to show harm to a specific business or property interest, an inquiry 'typically determined by reference to state law.'") (quoting Diaz, 420 F.3d at 900). The injury must be alleged based on a property interest recognized under state law. "Financial losses, in and of themselves, are insufficient to confer standing under RICO." Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 364 (9th Cir. 2005); see also Khrapunov, 956 F.3d at 1132 ("no state law indicating that voluntary expenditures to track down stolen property constitutes a separate injury to property").

A plaintiff must also "satisfy the proximate cause inquiry." That is, it must show

that the RICO claim's predicate act "was the actual cause of" the injury to property. "Proximate cause requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" Khrapunov, 956 F.3d at 1133 (quoting Holmes v. Secs. Inv'r Prot. Corp., 503 U.S. 258, 268 (1992)).

### ii.     Analysis

Dodgin argues that plaintiff's claims "are undeniably personal injury claims" and that his RICO claim "fails as a matter of law" because "a personal injury litigant such as Mr. Muldoon" cannot have standing to assert a RICO cause of action. Mot. at 11, 13. Although Dodgin cites to numerous orders that dismissed RICO claims where personal injuries were alleged, those opinions do not establish the bright-line rule that he asks this court to adopt. Regardless of whether an action includes what might be termed some "personal injury" to a plaintiff, the essential question to determine whether plaintiff alleges statutory standing for his RICO claim is whether a business or property interest recognized under state law was also injured. Multiple types of injury may be alleged, and the inclusion of some damages based on "personal injury" does not bar an otherwise properly alleged RICO claim.

Plaintiff plainly alleges various personal and pecuniary injuries. See, e.g., SAC ¶¶ 80–85. Among them are expenses he incurred for surgeries, related costs, and resulting financial losses. Id. ¶ 83; see also, e.g., id. ¶¶ 84, 93–94, 113–14, 127–28 & 138–39. He also argues that he "has been harmed in his business and has suffered a loss of his property in paying for a second implant, another hospital stay, another surgeon, etc." Opp. at 29. But such out-of-pocket expenses—absent the identification of an associated state-recognized property right—do not constitute injury to business or property sufficient to confer statutory standing. See Living Designs, 431 F.3d at 364 ("Financial losses, in and of themselves, are insufficient to confer standing under RICO."); Khrapunov, 956 F.3d at 1132 ("no state law indicating that voluntary expenditures to track down stolen property constitutes a separate injury to property").

However, plaintiff's opposition suggests that he might amend his complaint to

1    include allegations of injury to property interests established under California law, such as
2    intentional interference with contract and interference with prospective business relations.
3    See Opp. at 29 (quoting Diaz, 420 F.3d at 900); see also Guerrero v. Gates, 442 F.3d
4    697, 707–08 (9th Cir. 2006); Just Film, Inc. v. Buono, 847 F.3d 1108, 1119 (9th Cir.
5    2017).  Accordingly, while plaintiff's complaint does not sufficiently allege injury to
6    business or property to establish statutory standing, amendment would not be futile, and
7    plaintiff might be able to cure that defect on amendment.

### b. Allegations Supporting the RICO Claim

Dodgin argues that plaintiff fails to adequately allege facts supporting a RICO claim pursuant to Federal Rule of Civil Procedure's Rule 9(b) pleading standard.  Mot. at 11–13.  Plaintiff agrees that the Rule 9(b) pleading standard applies, but he argues that he satisfies it.  Opp. at 24–28.

#### i. Legal standard

"Rule 9(b) provides in pertinent part that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'  Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.  It also prevents the filing of a complaint as a pretext for the discovery of unknown wrongs and protects potential defendants—especially professionals whose reputations in their fields of expertise are most sensitive to slander—from the harm that comes from being charged with the commission of fraudulent acts."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985) (citation omitted).

"Allegations of fraud under [RICO] section 1962(c) 'must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme.'"  Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 541 (9th Cir. 1989) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).  A RICO complaint must "identif[y] the role of the individual defendants in the alleged fraudulent scheme."  Id.

### ii.     Analysis

To state a civil RICO claim, a plaintiff must alleged (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. Living Designs, 431 F.3d at 361.

Defendant argues that plaintiff has not included any specific allegations as to how he was involved in the alleged schemes DePuy conducted to sell harmful medical devices. Dodgin argues that because the complaint alleges DePuy also misinformed Dodgin, the complaint's allegations that Dodgin misinformed plaintiff are impossible. He argues that the court should accept the allegations that DePuy made fraudulent misrepresentations to both parties, and reject the allegations that Dodgin lied to plaintiff.[1] Dodgin also argues that, although the complaint alleges that DePuy paid Dodgin kickbacks to install its devices, those allegations are not pled with adequate specificity.

Plaintiff points to allegations he claims are specific enough. See, e.g., SAC ¶¶ 53–63 & 242–47.

Although plaintiff alleges a background scheme of kickbacks and plausible conjecture that DePuy paid Dodgin to install its hip components, the allegations plaintiff points to fail to satisfy Rule 9(b)'s heightened pleading standard. For example, many of the allegations refer to all defendants together as a defined term, which obfuscates which actor plaintiff alleges committed which act. Moreover, the allegations generally sound in plausible conjecture based on past conduct by the parties, but they are not pled with the specificity to put the parties on notice of what specific conduct is at issue in this action. Although the allegations identify Dodgin's general role in the described scheme, they do not identify the "time, place, and manner" of the fraud actually alleged in the complaint, other than with respect to Dodgin's failure to warn plaintiff of potential risks before

---

[1] Dodgin makes much of plaintiff's supposed inconsistent pleading throughout his briefing. But plaintiff is well within his rights to plead in the alternative. Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

1  surgery.  Moore, 885 F.2d at 541.

2  However, plaintiff may be able to add specificity to the allegations to satisfy

3  Rule 9(b)'s heightened pleading standard.  Accordingly, amendment might not be futile.

4  Claim 13 is DISMISSED WITH LEAVE TO AMEND to add allegations of injury to a

5  business or property interest, and to provide the specificity required by Rule 9(b).

### 2. Claim 14: Negligence

First, Dodgin argues that negligence must be determined by considering the information the parties had at the time (not using hindsight), and plaintiff's own complaint alleges that Dodgin did not know that the hip replacement components were likely to fail early.  Second, Dodgin argues that the components were FDA-approved, so he did not violate any duty to use due care as a matter of law.  Third, Dodgin argues that he did not owe plaintiff any duty of care, which is a required element for negligence.  Fourth, Dodgin argues that the fact that the FDA had not approved the hip components together as a system did not cause plaintiff's harm.[2]

Plaintiff argues that Dodgin frames the question entirely wrong.  Plaintiff alleges that Dodgin owed plaintiff a duty to have the degree of learning and skill ordinarily possessed by surgeons in the same or similar locality under similar circumstances; to use the same degree of skill and care usually exercised by practitioners for the medical profession in the same or similar locality under similar circumstances; and to use reasonable diligence in the application of the physician's learning and skill.  Plaintiff argues that Dodgin breached that duty by implanting the DePuy hip components together as a system into plaintiff, which caused plaintiff harm.

To state a claim for medical negligence, plaintiff must allege "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury."  Ladd v. Cnty. of San Mateo, 12 Cal. 4th 913, 917,

---

[2] Although defendant John Muir Health raised an argument that plaintiff's negligence claim may be time-barred pursuant to Cal Code Civ. Proc. § 340.5 as interpreted by Garabet v. Superior Ct., 151 Cal. App. 4th 1538 (2007), Dodgin's motion did not present that issue.

10

1  911 P.2d 496 (1996) (internal quotation marks omitted).

2  First, Dodgin argues that plaintiff's complaint alleges that even Dodgin did not 3 know the hip components he used were subject to early failure at the time he used them. 4 Plaintiff argues that the complaint pleads in the alternative, and it is permitted to do so. 5 As discussed above, alternative pleading is permitted under the Federal Rules of Civil 6 Procedure, and the court may not dismiss a well-pled claim even if other allegations in 7 the complaint were inconsistent with an element of the claim.  The proper inquiry is 8 whether plaintiff pleads facts to support his negligence claim against Dodgin, not whether 9 he pleads additional facts that may tend to weaken or be inconsistent with that claim.

10  Second, Dodgin argues that he could not have been negligent because the 11 components he used were FDA-approved.  Mot. at 16–17; Reply at 12–14.  He argues 12 that the components were approved pursuant to the "§ 510(k) process" at the time of 13 installation, and then later PMA-approved, which establishes that the products were safe 14 and Dodgin was not negligent as a matter of law.[3]  Id.

15  The parties agree that the individual components installed in plaintiff each received 16 FDA approval separately pursuant to § 510(k), and that they were not at that time FDA-17 approved to be used as a system.  Plaintiff alleges that Dodgin "implant[ed] the DePuy 18 Components, a non-FDA approved **system**, into Plaintiff."  SAC ¶ 253 (emphasis added). 19 Dodgin argues that the FDA's later PMA approval of the "Pinnacle CoMplete Acetabular 20 Hip System"—an artificial hip system made by DePuy—establishes that the system 21 installed in plaintiff was eventually PMA-approved.  Plaintiff argues that the components 22 he received were different from the later-approved Pinnacle CoMplete device.

23  The parties discuss and at times conflate the implications of two relevant types of 24 FDA approval.  One is referred to as the "§ 510(k) process," whereby a product can 25 bypass substantive FDA review if it is substantially equivalent to an older, already-

---

[3] Dodgin argues that the components were approved under "§ 501(k)" throughout his briefing without specifying the exact statute, but the court reads those as references to the "§ 510(k) process" as codified at 21 U.S.C.A. § 360(k).

11

approved device.[4]  Approval under § 510(k) does not preempt common-law claims implicating such devices.  Medtronic, Inc. v. Lohr, 518 U.S. 470, 494 (1996).  Each component of plaintiff's hip replacement was certified to be sold pursuant to the § 510(k) process.  Another type of FDA approval at issue is referred to as the "PMA process," which entails a more thorough safety review by the FDA.  PMA approval does preempt common-law claims implicating such devices, even retroactively.  Riegel v. Medtronic, Inc., 552 U.S. 312, 318 (2008).  DePuy's "Pinnacle CoMplete Acetabular Hip System" received PMA approval in June 2011.  Accordingly, if plaintiff received the "Pinnacle CoMplete Acetabular Hip System," plaintiff's negligence claim would be preempted.

However, the parties present a factual dispute as to whether the PMA-approved Pinnacle CoMplete was installed in plaintiff.  They dispute whether plaintiff's hip replacement used § 510(k)-approved or PMA-approved devices.  See Opp. at 22; SAC ¶¶ 34–38.  To the extent defendant's argument requires the court to resolve that factual question at the pleading stage, it cannot prevail on a motion to dismiss.  At this stage, the court credits plaintiff's allegation that the components installed in him were § 510(k)-approved and did not later receive PMA approval.

Plaintiff's negligence claim does not rest on the fact that any individual component was used, but rather that Dodgin acted outside the degree of skill and care usually exercised by practitioners for the medical profession by implanting the DePuy hip components together as a system.  See Medtronic, 518 U.S. at 491 ("The legislative history also confirms our understanding that § 360(k) simply was not intended to pre-empt most, let alone all, general common-law duties enforced by damages actions.").

Third, Dodgin argues either that he did not owe plaintiff any duty of care when performing the surgery, or that he "did not owe Mr. Muldoon a duty not to implant the Components on the basis that they were not FDA approved since they were in fact FDA

---

[4] The relevant statute for § 510(k) approval is codified at 21 U.S.C.A. § 360(k); the process is referred to by the number of the section in a previous version of the Food and Drug, and Cosmetic Act.  See Medtronic, 518 U.S. at 478–79.

1    approved." Mot. at 17.  But Dodgin's attempt to define his legal duty is either much too
2    broad (he argues he had no duty at all), or much too narrow (that he not implant FDA-
3    approved devices).  To state a claim for medical negligence, plaintiff must allege "a legal
4    duty to use due care", and plaintiff alleges simply that Dodgin's duty was to provide the
5    standard of care that others in his field would provide, and that regardless of individual
6    components' FDA approval he had the duty to implant only combinations of devices he
7    knew to be safe.  That is sufficient to allege a legal duty to use care.

8    Dodgin also argues that because the installed components were FDA-approved,
9    using them even "off-label" cannot constitute negligence as a matter of law.  See Mot. at
10   12–13 & 17–18 (citing Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001));
11   Reply at 12–14 ("As a matter of law, Dr. Dodgin owed no duty to refrain from implanting
12   the FDA §501(k) approved medical devices into plaintiff.").  The Buckman case Dodgin
13   heavily relies on concerned a category of "fraud-on-the-FDA" claims, where private actors
14   brought claims alleging that a device was granted FDA approval based on fraudulent
15   representations made to the FDA.  In that context, the Supreme Court held that state-law
16   tort claims alleging "fraudulent representations to the Food and Drug Administration (FDA
17   or Administration) in the course of obtaining approval . . . are pre-empted by the Federal
18   Food, Drug, and Cosmetic Act (FDCA), 52 Stat. 1040".  Buckman, 531 U.S. at 343–44.
19   Although that case recognized as an aside that "off-label use is generally accepted", the
20   case does not hold what Dodgin suggests, namely that § 510(k) approval of a device
21   preempts all potential negligence liability for doctors using it, regardless of the context.  In
22   fact, the case expressly distinguishes an earlier case, Medtronic, that presented a
23   "common-law negligence" claim, from the "fraud claims here" that arise "solely from the
24   violation of FDCA requirements."  Buckman, 531 U.S. at 352.

25   Fourth, Dodgin argues that the fact that the hip components were not FDA-
26   approved did not cause plaintiff's harm.  That is because, he argues, even if the FDA had
27   approved all of the individual components to be installed together as a system, plaintiff
28   would still have suffered the same harm.  Therefore, the fact that the hip system was not

13

1  FDA-approved did not cause plaintiff's harm, so the essential element of causation in
2  plaintiff's negligence claim is missing.
3        This baffling argument follows from Dodgin's attempt to define his legal duty much
4  too narrowly—namely, a duty that he not implant non-FDA-approved devices.  But
5  plaintiff does not allege that the FDA's approval (or not) of the devices caused harm.  He
6  argues that the devices Dodgin installed caused him harm.  Read in context of the legal
7  duty actually alleged, the complaint alleges that Dodgin fell short of his duty to provide
8  the standard of care of typical doctors, and his failure to do so caused plaintiff harm.  The
9  type of FDA approval the devices had (or didn't) may be relevant to whether Dodgin's
10  care fell short of the prevailing standard (the duty prong of a negligence claim), but the
11  device's FDA approval is immaterial as to whether Dodgin's care *caused* plaintiff harm.
12        For the foregoing reasons, Dodgin's motion to dismiss plaintiff's negligence claim
13  is DENIED.
14        **3.**    **Claim 18:  Battery**
15        Dodgin argues that the allegations underlying plaintiff's battery claim support a
16  claim for negligence based on lack of informed consent but not battery, because a battery
17  claim requires allegations that a doctor performed a procedure without any consent.
18  Plaintiff argues that he consented to one treatment but received an entirely different
19  surgery, which constitutes battery under California law.
20        "In Cobbs v. Grant, the California Supreme Court addressed the issue whether the
21  lack of informed consent to a medical procedure gives rise to a negligence or battery
22  claim for injuries that result from that procedure."  Moran v. Selig, 447 F.3d 748, 758 (9th
23  Cir. 2006) (citation omitted); Cobbs v. Grant, 8 Cal. 3d 229, 239 (case presented question
24  whether "an undisclosed potential complication results, the occurrence of which was not
25  an integral part of the treatment procedure but merely a known risk . . . should be
26  deemed to be a battery or negligence.").  "Where a doctor obtains consent of the patient
27  to perform one type of treatment and subsequently performs a substantially different
28  treatment for which consent was not obtained, there is a clear case of battery.  However,

14

when an undisclosed potential complication results, the occurrence of which was not an integral part of the treatment procedure but merely a known risk, the courts are divided on the issue of whether this should be deemed to be a battery or negligence." Cobbs, 8 Cal. 3d at 239 (citations omitted).

"The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent given is present. However, when the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence." Id. at 240–41; see also Saxena v. Goffney, 159 Cal. App. 4th 316, 324 & 327 (2008) ("A claim based on lack of informed consent—which sounds in negligence—arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives. In contrast, a battery is an intentional tort that occurs when a doctor performs a procedure without obtaining any consent. . . . Performing a medical procedure without informed consent is not the same as performing a procedure without any consent.").

However, in extreme circumstances "California courts have . . . held that when a patient is affirmatively misled and consents to a procedure that is 'substantially different' from that which was performed, such a procedure may amount to a battery." Moran, 447 F.3d at 759 (quoting Nelson v. Gaunt, 125 Cal. App. 3d 623, 635 (1981)). Battery has the "requisite element of deliberate intent to deviate from the consent given". Cobbs, 8 Cal. 3d at 240; accord Nelson, 125 Cal. App. 3d at 634 ("Since battery is an intentional tort, the battery theory should be reserved for those circumstances where a doctor performs an operation to which the patient has not consented.").

The operative question concerns whether the patient has consented to the

15

1  procedure that actually occurred. Here, the complaint clearly confirms that plaintiff
2  consented to hip replacement surgery. The question is whether the surgery that actually
3  occurred was inherently different from that to which he consented. If so, battery is
4  alleged. If not, the complaint sounds in negligence based on a lack of informed consent.[5]

Plaintiff clearly alleges that he was not adequately informed about the risks of his hip replacement or given sufficient details about how the various components being put into him would interact. See, e.g., SAC ¶¶ 53 ("Dodgin did *not* inform Plaintiff that he intended to use a configuration of medical device implants that had not been FDA approved together as a system. In fact, Dr. Dodgin did not inform Plaintiff of any of the risks of a ceramic-on-metal bearing surface configuration, nor did he explain any other options to Plaintiff.") & 301 (same). These allegations all support negligence, not battery. At bottom, plaintiff alleges that Dodgin performed the agreed-upon procedure—a hip replacement—and withheld information concerning the risks of and his incentives for performing the surgery. That sounds in negligence.

Accordingly, Claim 18 alleging battery is DISMISSED, and as amendment would be futile the dismissal is WITH PREJUDICE.

### 4. Motion to Strike

Dodgin argues that portions of SAC ¶ 275 should be stricken as immaterial and that SAC ¶ 278 should be stricken in its entirety as redundant and "false as a matter of law." Mot. at 20.

#### a. SAC ¶ 275

Dodgin argues that portions of SAC ¶ 275 should be stricken as immaterial, as

---

[5] Additionally, to the extent a plaintiff alleges a deliberate intent to deceive him into a surgery, California courts have suggested a fraud claim could be an appropriate vehicle. For example, in Nelson, the court held that a fraud cause of action was appropriate where a doctor injected a patient with silicone "without telling her: 1) the name of the substance; 2) the fact that it could be used only under scientific circumstances; 3) even under those conditions, its use required state or federal approval; and 4) he did not have a permit." Nelson, 125 Cal. App. at 635 ("In the more egregious situation in the instant case, a fraud theory is apposite. . . . Such cases can be tried on either a fraud or negligence theory, depending on the defendant's state of mind: whether he intentionally or negligently misled the plaintiff.").

16

1  they cannot form the basis of a claim of medical negligence against Dodgin. That

2  paragraph provides:

> **Dr. Dodgin did not inform Plaintiff about the risks and potential benefits of a metal-on-metal configuration or a ceramic-on-metal configuration of prosthetic medical devices used in hip replacement surgeries.** Nor did Dr. Dodgin inform Plaintiff about alternative implants.

SAC ¶ 275 (plaintiff proposes striking the bold portion).

First, Dodgin argues that plaintiff elsewhere alleges that he "received the same information as Dr. Dodgin from DePuy regarding the ceramic on metal Components. Thus, Mr. Muldoon knew as much as Dr. Dodgin regarding the efficacy of the products prior to his surgery." Mot. at 19. As an initial matter, Dodgin's contention that he (an orthopedic surgeon) was equally informed as plaintiff (a layperson) about the relative risks and benefits of various types of artificial hips is disquieting. But more importantly, Dodgin would seek to prevent plaintiff from pleading in the alternative, and he would ignore the consistent allegations that Dodgin acted in concert with DePuy. See, e.g., SAC ¶¶ 56–58 & 61. Those paragraphs also allege that Dodgin possessed knowledge about replacement hip components that plaintiff did not.

Second, Dodgin argues that ¶ 275's statement that Dodgin did not inform plaintiff about the risks or benefits of a metal-on-metal hip should be stricken as immaterial because he did not receive a metal-on-metal hip. As an initial matter, plaintiff makes an allegation supporting an inference that Dodgin might have believed he was installing a metal-on-metal hip. SAC ¶ 54. More importantly, the allegations in ¶ 275 are relevant to plaintiff's informed consent claim. That claim alleges that Dodgin was required to inform plaintiff about the benefits, risks, and alternatives to his surgery.

Accordingly, Dodgin's motion to strike ¶ 275 is DENIED.

### b. SAC ¶ 278

Dodgin argues that SAC ¶ 278 should be stricken in its entirety as redundant and "false as a matter of law." Mot. at 20. That paragraph provides:

> Plaintiff, had Dr. Dodgin informed Plaintiff in a consented

> manner before the events set forth in the Complaint, would not have consented to an invasive surgical procedure utilizing a non-FDA approved configuration of DePuy devices from a physician receiving financial compensation from DePuy.

SAC ¶ 278.

Dodgin argues that each component was independently FDA-approved, and a product called Pinnacle CoMplete was approved by the FDA following the surgery, which constitutes a FDA finding that plaintiff's surgery was safe. Also, because doctors are allowed to employ off-label uses, Dodgin argues that his failure to discuss FDA approval with plaintiff cannot form the basis of a negligence cause of action.

This argument largely mirrors Dodgin's misplaced arguments concerning dismissal of the negligence cause of action. While it is true that some types of FDA approval preempts state common-law tort claims such as negligence (Riegel, 552 U.S. at 318), there is a factual dispute as to the nature of the FDA's approval of the hip installation as discussed above. Resolution of that factual dispute would be required to grant Dodgin's motion to strike, and the court declines to do so at this time. Dodgin's motion to strike does not raise any scandalous or impertinent allegations appropriate for the court to police. Instead, the motion to strike raises substantive issues better dealt with on a motion to dismiss or motion for summary judgment. Accordingly, Dodgin's motion to strike ¶ 278 is DENIED.

### 5. Request for Judicial Notice

Plaintiff requests the court take judicial notice of three documents. Dkt. 65. Dodgin does not oppose the request.

Exhibit A appears to be a DePuy document describing the Pinnacle CoMplete hip replacement system, which is the system that received PMA approval from the FDA, although plaintiff does not explain the nature or purpose of the document. The document is not necessary for resolution of the present motion, and as its nature and purpose are unclear, plaintiff's request for judicial notice of this document is DENIED.

Exhibit B is ostensibly an unsigned deferred prosecution agreement between DePuy and the Department of Justice. It is unsigned and undated, and its source of

origin is unclear. Because the court cannot trust the authenticity of this document as presented, plaintiff's request for judicial notice of this document is DENIED.

Exhibit C is a publicly-filed criminal complaint that was filed in federal court, complete with a (garbled) ECF header. It appears to be from a souce from which the authenticity is not reasonably doubted, and as the request is unopposed by Dodgin plaintiff's request for judicial notice of this document is GRANTED.

## CONCLUSION

For the foregoing reasons, Dodgin's motion to dismiss plaintiff's RICO claim (Claim 13) as alleged against Dodgin is GRANTED, and the claim is DISMISSED WITH LEAVE TO AMEND to include allegations establishing statutory standing and identifying with particularity Dodgin's role and actions in the alleged enterprise; Dodgin's motion to dismiss plaintiff's negligence claim (Claim 14) as alleged against Dodgin is DENIED; and Dodgin's motion to dismiss plaintiff's battery claim (Claim 18) as alleged against Dodgin is GRANTED, and the claim is DISMISSED WITH PREJUDICE.

The deadline to file an amended complaint, if plaintiff wishes to do so, will be set forth in the court's order adjudicating DePuy's motion to dismiss, which is currently pending before the court. No new claims or parties shall be added without consent of the defendants or leave of court.

**IT IS SO ORDERED.**

Dated: April 30, 2024

/s/ Phyllis J. Hamilton<br>
PHYLLIS J. HAMILTON<br>
United States District Judge