1
2
3
4                      UNITED STATES DISTRICT COURT
5                     NORTHERN DISTRICT OF CALIFORNIA
6
7    JOHN MULDOON,
                                          Case No.  15-cv-02723-PJH
8              Plaintiff,
9        v.                               **ORDER GRANTING IN PART AND
                                          DENYING IN PART DEPUY
10   DEPUY ORTHOPAEDICS, INC., et al.,     DEFENDANTS' MOTION TO DISMISS**
11             Defendants.                 Re: Dkt. No. 53
12
13

14       Before the court is defendants Medical Device Business Services, Inc. f/k/a DePuy

15   Orthopaedics, Inc., DePuy, Inc., Johnson & Johnson, Johnson & Johnson Services, Inc.,

16   and Johnson & Johnson International's (collectively, "DePuy" or the "DePuy Defendants")

17   motion to dismiss.  The matter is fully briefed and suitable for decision without oral

18   argument.  Having read the parties' papers and carefully considered their arguments and

19   the relevant legal authority, and good cause appearing, the court hereby rules as follows.

20                              **BACKGROUND**

21       This action was filed by plaintiff John Muldoon on June 17, 2015.  Dkt. 1.  The

22   operative Second Amended Complaint ("SAC", Dkt. 42) alleges eighteen (18) causes of

23   action against numerous defendants, all related to damages plaintiff alleges he suffered

24   from his hip-replacement surgery conducted in 2007.  The named defendants are

25   Dr. David Dodgin, M.D. (the surgeon who performed the hip implant procedure in 2007),

26   John Muir Health (the facility at which the 2007 procedure was performed), and the

27   DePuy Defendants (the entities responsible for producing and/or manufacturing the hip

28   components that were used).

The SAC alleges the following causes of action against the DePuy Defendants: (1) negligence; (2) strict product liability, manufacturing defect; (3) strict product liability, design defect; (4) strict product liability, failure to warn; (5) strict product liability, failure to test; (6) strict product liability, breach of express warranty; (7) strict product liability, breach of implied warranty; (8) fraud, intentional misrepresentation; (9) negligent misrepresentation; (10) false advertising; (11) violation of consumer legal remedies act; (12) violation of unfair competition law; and (13) civil RICO against all defendants.

On January 19, 2024, DePuy filed the instant motion to dismiss all claims alleged against them. Mot., Dkt. 53. On March 5, plaintiff filed a 59-page opposition after the deadline had passed. Dkt. 66. On April 8, the DePuy Defendants filed a reply, noting that plaintiff's opposition violated this court's rules. Dkt. 71. The court permitted the parties to re-file complying opposition and reply briefs, with plaintiff paying the costs of defendants' revision of their reply. Dkt. 77. On May 10, plaintiff filed a new opposition. Opp., Dkt. 79. On May 17, the DePuy Defendants filed a new reply. Reply, Dkt. 81.

**A.    Procedural Background**

On June 17, 2015, plaintiff brought this case as a class action. With motions to dismiss pending, the lawsuit was removed to the Multi-District Litigation and stayed. Dkt. 21. The case was remanded back to this court in January 2023. Dkt. 26. Plaintiff filed the SAC on July 14, 2023, eliminating the class allegations. Dkt. 42.

**B.    Factual Background**

When considering this motion to dismiss, the court recounts facts as alleged in the operative complaint. John Muldoon presented to John Muir Medical Center, Concord Campus on January 3, 2007 to undergo a left total hip arthroplasty performed by Dodgin. SAC ¶¶ 17–18. During the surgery, Dodgin implanted a prosthetic medical device system which contained a ceramic-on-metal bearing surface consisting of components manufactured by DePuy. Id. ¶ 19.

At some point after plaintiff's January 2007 surgery, but unbeknownst to him, friction and wear between the ceramic head and cobalt-chromium metal liner began to

United States District Court
Northern District of California

1    cause toxic cobalt-chromium metal ions and particles to be released into his body,

2    causing him various injuries.  Id. ¶ 21.

3          In August of 2014, Muldoon was evaluated by Louay Toma, M.D. for complaints

4    related to his hip.  Toma recommended and reviewed an MRI of the left hip and

5    recommended revision surgery to remove the implanted ceramic-on-metal bearing

6    surface.  Id. ¶ 23.  On October 15, 2014, Toma performed a revision surgery on plaintiff

7    and replaced the ceramic-on-metal device with a ceramic-on-plastic one.  Id. ¶ 25.

8          Plaintiff contends that the original ceramic-on-metal implant caused him injuries

9    and that the DePuy Defendants knew it was likely that the hip implant would fail early

10   necessitating revision surgeries.  Plaintiff also alleges DePuy entered into relationships

11   with orthopedic surgeons, such as Dodgin, to incentivize surgeons to use their hip

12   implants while concealing the risk of early failure of the device.

**DISCUSSION**

**A.    Legal Standard**

15         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

16   legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191,

17   1199–1200 (9th Cir. 2003).  A complaint may be dismissed if the plaintiff fails to state a

18   cognizable legal theory or has not alleged sufficient facts to support a cognizable legal

19   theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

20         While the court is to accept as true all the factual allegations in the complaint,

21   legally conclusory statements not supported by actual factual allegations need not be

22   accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer

23   sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

24   Twombly, 550 U.S. 544, 555, 558–59 (2007).

25         "A claim has facial plausibility when the plaintiff pleads factual content that allows

26   the court to draw the reasonable inference that the defendant is liable for the misconduct

27   alleged."  Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court

28   to infer more than the mere possibility of misconduct, the complaint has alleged—but it

United States District Court
Northern District of California

1    has not 'shown'—that the pleader is entitled to relief." Id. at 679.

2         Because certain of plaintiffs' claims sound in fraud, those claims must also meet

3    the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  See Kearns v.

4    Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) requires a party alleging

5    fraud or mistake to state with particularity the circumstances constituting fraud or mistake.

6    To satisfy this standard, the "complaint must identify the who, what, when, where, and

7    how of the misconduct charged, as well as what is false or misleading about the

8    purportedly fraudulent statement, and why it is false." Salameh v. Tarsadia Hotel, 726

9    F.3d 1124, 1133 (9th Cir. 2013) (internal quotation marks omitted).

10        Review is generally limited to the contents of the complaint, although the court can

11   also consider a document on which the complaint relies if the document is central to the

12   claims asserted in the complaint and no party questions the authenticity of the document.

13   See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007).  The court may also consider

14   matters that are properly the subject of judicial notice.  Knievel v. ESPN, 393 F.3d 1068,

15   1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001).

16        If dismissal is warranted, it is generally without prejudice unless it is clear that the

17   complaint could not be saved by amendment.  Polich v. Burlington N., Inc., 942 F.2d

18   1467, 1472 (9th Cir. 1991).  "Leave to amend may also be denied for repeated failure to

19   cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d

20   733, 742 (9th Cir. 2008).

21   **B.    Analysis**

22        The DePuy Defendants have moved to dismiss each claim pled against them, and

23   this order addresses each in turn.  The court begins with an analysis of the DePuy

24   Defendants' argument that the entire action should be dismissed because it is preempted

25   by the FDA's approval of DePuy's "Pinnacle CoMplete Acetabular Hip System."[1]

26   _____

27   [1] The parties refer to this FDA-approved system by various names, including the
     "Pinnacle CoMplete System", the "Pinnacle CoMplete device", "Pinnacle CoMplete", the
28   "Pinnacle CoM Device", or just the "CoMplete" device.

1          **1.      Whether the Action is Preempted Due to FDA Approval**

2          DePuy argues that the entire action should be dismissed because the FDA

3  approved the Pinnacle CoM Device, which DePuy argues was installed in plaintiff.

4  Plaintiff argues that the Pinnacle CoM Device was not installed in him.

5          DePuy is correct that FDA approval of a device through its premarket approval

6  ("PMA") process preempts state-law claims concerning that device.  Riegel v. Medtronic,

7  Inc., 552 U.S. 312 (2008); see also Mot. at 4–9.  Claims are preempted even where the

8  FDA approval occurs after surgery, as was the case here.  Additionally, the parties agree

9  that the individual components installed in plaintiff were each FDA-approved pursuant to

10 Section 510(k), and that 510(k) approval does not preempt state-law claims.  See SAC

11 ¶ 35 (Section 510(k) approval of individual components); Reply at 2 ("It is not DePuy's

12 position that components approved through the Section 510(k) process have a

13 preemptive effect under the MDA.").[2]

14         The parties dispute whether the FDA-approved Pinnacle CoM Device was

15 installed in plaintiff.  The resolution of this factual dispute would determine whether

16 plaintiff's claims are preempted.  DePuy argues that the individual components installed

17 in plaintiff were later approved by the FDA together as the Pinnacle CoM system.

18 Plaintiff argues that the separate components of his 2007 implant are not the same as the

19 CoMplete system.  Opp. at 10 ("There is nothing connecting the four different

20 components implanted in Mr. Muldoon in 2007 with CoMplete.") & 22 (it is a "fantasy that

21 the Depuy Components are the same as the Pinnacle CoMplete system").

22         Although DePuy argues that the complaint alleges the Pinnacle CoMplete System

23 was installed in plaintiff, the court finds DePuy's reading of the complaint too strained and

24 disconnected from the actual text to resolve this factual question in defendant's favor on

25 a motion to dismiss.  See Reply at 2 (citing SAC ¶¶ 32–37).  The SAC alleges that certain

26

27  ───────────────────
28  [2] The court discussed the distinction between the FDA's approval via PMA and § 510(k) at greater length in its Order Granting in Part and Denying in Part Dodgin's Motion to Dismiss and Strike, Dkt. 76 at 11–13.

United States District Court
Northern District of California

1    components that were individually approved under § 510(k) were installed in plaintiff, and

2    that later DePuy filed for PMA approval of the "Pinnacle CoMplete" System.  See SAC

3    ¶¶ 26–38.  That system was the "first-of-a-kind" ceramic-on-metal hip replacement

4    system.  SAC ¶ 37.  The complaint nowhere alleges that plaintiff received the Pinnacle

5    CoMplete System or components of it.

6         In the face of the complaint's failure to support DePuy's argument, it asks the court

7    to parse through a FDA document titled "Summary of Safety and Effectiveness Data,"

8    which includes information about the "Pinnacle CoMplete Acetabular Hip System".  See

9    Request for Judicial Notice, Dkt. 54 ("RJN"), Ex. A.  DePuy argues that document

10   describes various components of a hip system, and that the complaint alleges that

11   plaintiff got those components.  But the judicially-noticeable FDA document describes

12   individual components and using their tradenames or other specific product identifiers.

13   See, e.g., id. at 4 (table identifying components by name/part number).  The operative

14   complaint also identifies components with some level of particularity, but DePuy has not

15   shown that these components are the same.  E.g., SAC ¶¶ 19 ("DePuy Corail stem" &

16   "DePuy Pinnacle shell") & 55 ("Delta ceramic femoral head").  Rather than explain how

17   any particular component in the SAC corresponds to or is identical to a particular

18   component in the FDA document, DePuy points very generally to certain categories of

19   components and simply asserts that they are identical.  See Mot. at 5 (arguing that the

20   complaint and FDA document both describe a cup, liner, and head); Reply at 1 (same).

21   But DePuy has provided the court with no indication these products of the same category

22   are actually identical.  And as plaintiff disputes that they are identical as a factual matter,

23   this issue is inappropriate for resolution on defendant's motion to dismiss.

24        Because plaintiff disputes that the PMA-approved components were actually

25   installed in him, and because DePuy has not demonstrated that they were based on the

26   face of the pleadings or on judicially-noticeable materials, the court declines to grant

27   DePuy's motion to dismiss based on FDA preemption.  However, to the extent DePuy

28   can demonstrate the factual basis of its argument beyond a genuine dispute, this issue

United States District Court
Northern District of California

1  may be appropriate to revisit on summary judgment.

2  **2.  Claim 1:  Negligence**

3  DePuy argues that the pleading is conclusory and doesn't provide enough factual

4  allegations to support a claim for negligence.  Plaintiff argues that he alleges sufficient

5  facts in paragraphs 1–85 of the SAC, and more specifically in paragraphs 70–85.

6  "The elements of a cause of action for negligence are well established.  They are

7  '(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; and (c) the breach as

8  the *proximate or legal cause* of the resulting injury.'"  Ladd v. Cnty. of San Mateo, 12 Cal.

9  4th 913, 917–18 (1996) (quoting Evan F. v. Hughson United Methodist Church, 8 Cal.

10  App. 4th 828, 834 (1992)).

11  DePuy argues that the pleading is not specific enough in describing how it was

12  negligent.  It cites Rhynes v. Stryker Corp., Case No. 10-cv-5619-SC, 2011 WL 2149095

13  (N.D. Cal. May 31, 2011) in support.  In Rhynes, the plaintiff alleged that an implanted

14  artificial hip failed to perform its intended purpose.  She also alleged that defects caused

15  loosening of the device, but she did not indicate how the loosening caused her harm

16  other than that the hip did not function as promised.  The Rhynes court—the only case

17  DePuy cites—found that the plaintiff failed to adequately allege causation.

18  The allegations in that case are markedly different from what plaintiff presents in

19  his complaint.  Plaintiff's allegations do not suffer from the defects DePuy points to in

20  Rhynes, as he adequately pleads the harm he suffered and causation.  First, plaintiff is

21  clear in the harm that he suffered:  he experienced pain and missed work, and he

22  ultimately needed the hip to be replaced again.  SAC ¶¶ 82–84.  Second, he described

23  the causal mechanism linking the defect to his harm.  Namely, the metal portion of the

24  prosthetic broke down and released metal debris in his body.  The complaint alleges what

25  Rhynes lacked:  particularly-identified harms and a causal mechanism.

26  DePuy also argues that plaintiff alleges with insufficient particularity how it

27  breached its legal duty.  DePuy argues plaintiff's allegations that DePuy breached its duty

28  when designing, testing, and manufacturing the products is conclusory, and lacks any

United States District Court
Northern District of California

7

1   factual allegations as to specifically how DePuy failed to adequately test its products.

2   But this argument from DePuy requires too much of plaintiff to meet his Rule 8 pleading

3   obligation.  DePuy would seem to require plaintiff to plead detailed information about a

4   company's internal design and manufacture process to allege negligence.  But that is not

5   required, and plaintiff's allegations that the product actually degraded inside his body are

6   sufficient to plead a breach of duty.

7          DePuy does not raise any argument concerning the particularity of plaintiff's

8   pleading with respect to which DePuy Defendant undertook which alleged action.

9   Plaintiff's negligence claim will require him to prove each element of the cause of action

10  as to each entity against which the claim is alleged.  Although DePuy did not move to

11  dismiss on this basis, that issue may be appropriate to raise on summary judgment.

12         Accordingly, DePuy's motion to dismiss plaintiff's first claim for negligence is

13  DENIED.

14         **3.     Claim 2:  Manufacturing Defect**

15         DePuy argues that plaintiff has not identified any specific manufacturing defect or

16  how the device deviated from defendants' intended result or other units from the same

17  product line.  Plaintiff argues that he alleges that his implants failed by creating metallic

18  debris and/or loosening, which caused severe pain, discomfort, and injury.  SAC ¶ 20.

19         Plaintiff's manufacturing defect claim requires him to plead four elements:  (1) that

20  defendants manufactured, distributed, or sold the product; (2) that the product contained

21  a manufacturing defect when it left defendant's possession; (3) that plaintiff was harmed;

22  and (4) that the defect was a substantial factor in causing the harm.  See CACI 1201.

23         First, the parties do not dispute that defendants manufactured, distributed, or sold

24  the product.  However, as with plaintiff's negligence claim, plaintiff must establish this

25  element as to each defendant against which the claim is alleged.  DePuy does not raise

26  any argument concerning the particularity of plaintiff's pleading with respect to which

27  DePuy Defendant manufactured, distributed, and sold the product, although this issue

28  may be appropriate to raise on summary judgment.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Second, defendants argue that plaintiff failed to allege there was any defect.  "A

2  product has a manufacturing defect if it differs from the manufacturer's intended result or

3  from other ostensibly identical units of the same product line.  In other words, a product

4  has a manufacturing defect if the product as manufactured does not conform to the

5  manufacturer's design."  Garrett v. Howmedica Osteonics Corp., 214 Cal. App. 4th 173,

6  190 (2013) (citation omitted).  Here, plaintiff alleges that the components surgically

7  implanted in him broke apart and created metallic debris on his body, and/or the parts

8  became loose or detached from each other.  SAC ¶¶ 89–92.  These allegations are

9  sufficient to allege a defect.

10    Third, plaintiff adequately pleads his harm in the form of pain, missed work, and

11  ultimately needing the hip to be replaced again.  SAC ¶¶ 82–84.

12    Fourth, plaintiff adequately pleads causation by alleging that his harm was caused

13  by metal debris leeching into his body.

14    Accordingly, DePuy's motion to dismiss plaintiff's second claim for manufacturing

15  defect is DENIED.

16    **4.    Claim 3:  Design Defect**

17    DePuy argues that plaintiff's claim for strict liability for design defect must fail,

18  because California law does not recognize such a claim with respect to a prescription

19  drug or medical device.  Plaintiff argues that there is no claim for strict liability for a

20  design defect of a prescription drug under California law, but that California law does

21  recognize such a claim as to medical devices.

22    DePuy cites a number of cases, including the Supreme Court case Brown v.

23  Superior Ct., 44 Cal. 3d 1049, 1064 (1988), holding that a medical device cannot be the

24  subject of a design defect claim.  Plaintiff disputes DePuy's interpretation of Brown.

25  Plaintiff also argues that DePuy's other cited cases may constitute mere dicta on this

26  point, based on plaintiff's unsupported speculation that the devices at issue might have

27  had a type of FDA approval that preempted design defect claims entirely.  Plaintiff fails to

28  cite any case holding that design defect claims can challenge medical devices.

The California Supreme Court exempted drug manufacturers from strict liability "for injuries caused by the design defect of a prescription drug" in Brown. 44 Cal. 3d at 1064. "Drug manufacturers, however, are *not* exempt from liability for manufacturing defects, failure to warn or negligence." Garrett, 214 Cal. App. 4th at 183. The California Court of Appeal has extended the Brown exemption to design defect claims against "an implanted prescription medical product". Hufft v. Horowitz, 4 Cal. App. 4th 8, 11 (1992), modified (Mar. 17, 1992) ("following Brown's lead, we hold that a manufacturer is not strictly liable for injuries caused by an implanted prescription medical product . . . . [T]here is no strict liability cause of action for design defect" for prescription medical products). Plenger v. Alza Corp. followed Hufft, concluding that the public policy considerations articulated in Brown are equally applicable to "prescription implanted medical devices." 11 Cal. App. 4th 349, 360 (1992). Numerous other California Court of Appeal opinions followed suit. See Artiglio v. Superior Ct., 22 Cal. App. 4th 1388, 1397 (1994) (design defect strict products liability is inapplicable to implanted medical devices that are available only through the services of a physician, and they need not necessarily be "prescribed" since they are provided directly by the physician); Scott v. C.R. Bard, Inc., 231 Cal. App. 4th 763, 773 (2014) (same); Garrett, 214 Cal. App. 4th at 184 (exemption applies even without prescription where the prosthesis "was both ordered by a physician and surgically implanted by a physician").

California law clearly bars design defect claims against manufacturers concerning implanted medical devices. Plaintiff's speculation that the consistent, one-sided body of case law on this question hinges entirely on the type of FDA approval that the device received is without any basis. No cited case discusses that fact at all, nor has plaintiff identified any reason for thinking that reasoning might be relevant.

Accordingly, DePuy's motion to dismiss plaintiff's third claim for design defect is GRANTED, and because amendment would be futile the claim is DISMISSED WITH PREJUDICE.

**5.    Claim 4:  Failure to Warn**

10

United States District Court
Northern District of California

1   DePuy argues that an allegation that a manufacturer breached its duty to warn a

2   patient fails as a matter of law, as a manufacturer's only duty is to warn the learned

3   intermediary, i.e., the doctor.  DePuy does not argue that it warned plaintiff.  Plaintiff

4   argues, among other things, that DePuy failed to adequately warn Dodgin.

5        "Ordinarily affirmative defenses may not be raised by motion to dismiss.  But a

6   complaint may be dismissed when the allegations of the complaint give rise to an

7   affirmative defense that clearly appears on the face of the pleading.  An affirmative

8   defense is grounds for dismissal at the pleading stage only if the plaintiff pleads itself out

9   of court—that is, admits all the ingredients of an impenetrable defense." Boquist v.

10  Courtney, 32 F.4th 764, 774 (9th Cir. 2022) (internal quotation marks and citations

11  omitted); accord Durnford v. MusclePharm Corp., 907 F.3d 595, 604 n.8 (9th Cir. 2018)

12  ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an

13  impenetrable defense—may a complaint that otherwise states a claim be dismissed

14  under Rule 12(b)(6).").  Accordingly, DePuy must demonstrate that its learned

15  intermediary affirmative defense clearly appears on the face of the pleading.

16       Under the learned intermediary doctrine, "a supplier may discharge its duty to

17  warn end users about known or knowable risks in the use of its product if it:  (1) provides

18  adequate warnings to the product's immediate purchaser, or sells to a sophisticated

19  purchaser that it knows is aware or should be aware of the specific danger, *and*

20  (2) reasonably relies on the purchaser to convey appropriate warnings to downstream

21  users who will encounter the product." Webb v. Special Elec. Co., 63 Cal. 4th 167, 187

22  (2016) ("Because the sophisticated intermediary doctrine is an affirmative defense, the

23  supplier bears the burden of proving" it.).

24       Under the first element of the defense, the court assesses whether plaintiff has

25  alleged that DePuy provided adequate warnings or knew that Dodgin was aware of the

26  specific danger.  DePuy argues that "Plaintiff makes no factual allegations that the

27  warnings provided to his physician were inadequate" (Reply at 5), but that gets the

28  burden exactly backwards.  In order to assert its defense, *DePuy* must demonstrate that

1  the warnings to the physician were adequate.  DePuy has not done so.  Instead, it has

2  identified a factual dispute as to whether DePuy adequately warned Dodgin which the

3  court may not resolve on a motion to dismiss.

4        Accordingly, DePuy's motion to dismiss plaintiff's fourth claim for failure to warn

5  based on the affirmative defense of the learned intermediary doctrine is DENIED without

6  prejudice to considering the argument on summary judgment.

7        **6.    Claim 5:  Failure to Test**

8        DePuy argues (1) that there is no cognizable claim under California law for failure

9  to test, surveil, or analyze, and any claim alleging a duty to test is subsumed by claims for

10  design defect, manufacturing defect, and failure to warn; and (2) that the components

11  installed in plaintiff were adequately tested, based on the FDA's PMA approval of the

12  Pinnacle CoM Device.  Plaintiff argues that California confers liability on manufacturers

13  for failure to adequately test a product.

14        This question of California law is suited for resolution on defendant's motion to

15  dismiss.  The parties dispute whether strict liability for failure to test is an independent

16  cause of action under California law.  It is not.  Courts routinely find that this claim is not

17  an independent cause of action, but that it is subsumed under claims for negligence,

18  design defect, or manufacturing defect.  See Valentine v. Baxter Healthcare Corp., 68

19  Cal. App. 4th 1467, 1486 (1999) (rejecting "an independent duty to test", as such a duty

20  "would be beyond the pale of any California tort doctrine we can identify"); Todd v.

21  Stryker Corp., No. 2:09-CV-01509-JAM, 2012 WL 2922727, at *4 (E.D. Cal. May 1, 2012)

22  ("manufacturer's alleged failure to test that product cannot, by itself, either cause injury to

23  be a source of liability for the manufacturer"); Baker v. Bayer Healthcare Pharms., Inc.,

24  No. C13-0490 TEH, 2013 WL 6698653, at *3 (N.D. Cal. Dec. 19, 2013) ("California law

25  does not recognize an independent cause of action for failure to test. Defendant is

26  correct", but "testing and inspection duties may be tied to liability for manufacture, design,

27  and failure to warn, even if they are not maintainable as an independent duty").

28        Plaintiff does not provide any contrary authority.  His argument relies on a jury

United States District Court
Northern District of California

1  instruction discussing testing in the context of negligence—an entirely different cause of

2  action.  See Opp. at 16 (quoting CACI 1221, Negligence - Basic Standard of Care).

3  Moreover, each case plaintiff cites assesses a theory of failure to test in the context of an

4  alleged negligence claim.  Id. (first citing Reynolds v. Nat. Gas Equip., Indus. Indem. Co.,

5  Intervener, 184 Cal. App. 2d 724, 736 (1960); and then citing Putensen v. Clay Adams,

6  Inc., 12 Cal. App. 3d 1062, 1077–78 (1970)).

7        Accordingly, DePuy's motion to dismiss plaintiff's fifth claim for failure to test is

8  GRANTED, and because amendment would be futile the claim is DISMISSED WITH

9  PREJUDICE.  Plaintiff can continue to pursue his theory that DePuy did not adequately

10  test its products as part of his negligence, manufacturing defect, and failure to warn

11  causes of action.

12        **7.      Claim 6:  Express Warranty**

13        DePuy argues that plaintiff fails to state a claim for breach of express warranty

14  because he does not plead privity of contract with DePuy, and privity is a necessary

15  element in a breach of warranty claim.  Plaintiff argues that privity is not required for an

16  action based upon an express warranty; he does not argue that he alleges privity.  This

17  question of California law is suited for resolution on defendant's motion to dismiss.

18        **a.      Legal Standard**

19        In 1954, the California Supreme Court established that privity of contract is

20  required for breach of express warranty claims.  Burr v. Sherwin Williams Co., 42 Cal. 2d

21  682, 695 (1954).  "The general rule is that privity of contract is required in an action for

22  breach of either express or implied warranty and that there is no privity between the

23  original seller and a subsequent purchaser who is in no way a party to the original sale."

24  Id. Burr explained a few exceptions to the rule, including foodstuffs and "a few cases

25  where the purchaser of a product relied on representations made by the manufacturer in

26  labels or advertising material."  Id. at 696.

27        In 1965, the California Supreme Court permitted an express warranty claim to

28  proceed against a car manufacturer, even though the plaintiff had made the purchase

United States District Court
Northern District of California

13

1   through a dealer, where "there was an express warranty to plaintiff in the purchase order,

2   [such that] no privity of contract was required."  Seely v. White Motor Co., 63 Cal. 2d 9,

3   14 (1965).  Although the plaintiff purchased the vehicle from a third party, he could bring

4   an express warranty claim against the manufacturer because the contract included a

5   representation from the manufacturer establishing an express warranty directly to the

6   purchaser.  Without discussing it, Seely fit comfortably within the exception that Burr

7   recognized "where the purchaser of a product relied on representations made by the

8   manufacturer in labels or advertising material."  Burr, 42 Cal. 2d at 696.

9        In 1975, the California Supreme Court stated that "[p]rivity is not required for an

10   action based upon an express warranty."  Hauter v. Zogarts, 14 Cal. 3d 104, 114 n.8

11   (1975).  It also wrote that "privity appears to remain a requirement for actions based upon

12   the implied warranty of merchantability", although in Hauter the plaintiff fell under an

13   exception to that requirement as he was "a member of the purchaser's family."  Id.  The

14   Hauter case concerned a golf-training device wherein a player hit a ball tied to string,

15   such that the ball would automatically be returned.  "The label on the shipping carton and

16   the cover of the instruction booklet urge players to 'drive the ball with full power' and

17   further state: 'Completely Safe Ball Will Not Hit Player.'"  Id. at 109.  Plaintiff "read and

18   relied upon defendants' representation; he was impressed by 'something on the cover

19   dealing with the safety of the item.'"  Id. at 117.  So, as in Seely, the plaintiff in Hauter

20   relied on statements made by the manufacturer directly to the ultimate purchaser.

21        In stating that no privity was required for express warranty claims, the Hauter court

22   cited only Seely, which reasoned that "[s]ince there was an express warranty to plaintiff in

23   the purchase order, no privity of contract was required."  Seely, 63 Cal. 2d at 14.  That is,

24   the Seely court reasoned that it did not need to assess the question of privity because the

25   defendant had made a direct representation on which the plaintiff relied—the defendant

26   had expressly warranted to plaintiff directly in the purchase order.  Id. at 13 ("Defendant

27   included the following promise in the printed form of the purchase order signed by

28   plaintiff").  Without discussing Burr, Hauter also fit comfortably within the exception Burr

1  recognized "where the purchaser of a product relied on representations made by the

2  manufacturer in labels or advertising material." <u>Burr</u>, 42 Cal. 2d at 696.

3          The California Court of Appeal has largely settled on a reading of the case law that

4  reconciles the above cases' broad statements about whether privity is required by

5  emphasizing that in <u>Seeley</u> and <u>Hauter</u>, the plaintiffs read and relied on specific, express

6  representations from the manufacturer and therefore fell into an exception recognized in

7  <u>Burr</u>.  In <u>Seeley</u>, the manufacturer's warranty was included as part of his contract with the

8  dealership.  In <u>Hauter</u>, the plaintiff read and relied on the manufacturer's representations

9  on the box and in the instructions.  Numerous California Court of Appeal opinions have

10 identified and relied on that same exception when applying the privity requirement to

11 express warrant claims.  <u>See, e.g.</u>, <u>Fundin v. Chicago Pneumatic Tool Co.</u>, 152 Cal. App.

12 3d 951, 957 (1984) ("cause of action based on breach of express warranty does not

13 require privity of contract with Chicago; when a consumer relies on representations made

14 by a manufacturer in labels or advertising material, recovery is allowable on the theory of

15 express warranty without a showing of privity"); <u>Klein v. Asgrow Seed Co.</u>, 246 Cal. App.

16 2d 87, 101 (1966) ("No privity of contract or sale was needed, because there was—as in

17 <u>Seely</u> and <u>Sherwin Williams</u>—communication of the warranty to the claimant."); <u>Smith v.</u>

18 <u>Gates Rubber Co. Sales Div.</u>, 237 Cal. App. 2d 766, 768 (1965) ("At least since <u>Burr v.</u>

19 <u>Sherwin Williams Co.</u>, 42 Cal. 2d 682, a purchaser relying on a manufacturer's

20 representations made in labels or advertising materials, has been permitted to recover on

21 the theory of express warranty without a showing of privity of contract.").

22         The same analysis applies in the medical device context.  <u>E.g.</u>, <u>Blanco v. Baxter</u>

23 <u>Healthcare Corp.</u>, 158 Cal. App. 4th 1039, 1058–59 (2008) (expressly deciding the issue

24 based on privity grounds rather than preemption in context of heart valve implant).

25 Plaintiff argues that <u>Blanco</u> is inapposite because that case concerned an FDA-approved

26 device, but <u>Blanco</u> explained that its decision was based on privity, and it explicitly

27 declined to reach the FDA-preemption question.  <u>Id.</u>

28                 **b.        Analysis**

United States District Court
Northern District of California

United States District Court
Northern District of California

1       Under the controlling California case law, privity is required for plaintiff's express

2 warranty claim unless he meets the well-recognized exception wherein the manufacturer

3 made claims directly to him on which he relied.  Plaintiff's SAC does not allege any such

4 statements or reliance.  <u>See</u> Opp. at 17–19 (citing SAC ¶¶ 144–58).  However, plaintiff's

5 opposition states that he purchased the components directly from DePuy without any

6 citation to the complaint.  Opp. at 23.

7       Accordingly, DePuy's motion to dismiss plaintiff's sixth claim for express warranty

8 is GRANTED WITH LEAVE TO AMEND.  Plaintiff may amend his complaint to state this

9 cause of action by alleging either (1) that he purchased the device directly from DePuy

10 and therefore has privity, as he argues in his opposition; or (2) that he read and relied on

11 specific statements made by DePuy.  Under the first option, the court requires plaintiff to

12 attach documentary proof of purchase in the form of an invoice, receipt, and/or specific

13 details of payment.  Under the second option, the court requires plaintiff to allege with

14 specificity the particular statements he relied upon, who made those statements, when

15 and where they were made, how they were presented to him, and in what manner he

16 relied upon them.

17      **8.**    **Claim 7:  Implied Warranty**

18       DePuy argues that privity of contract is required to plead a claim for breach of

19 implied warranty, and that the complaint does not allege privity between plaintiff and

20 DePuy.  Plaintiff argues that privity is not required for breach of implied warranty claims in

21 the products liability context.

22       "It is settled law in California that privity between the parties is a necessary

23 element to recovery on a breach of an implied warranty of fitness for the buyer's use . . . .

24 A demurrer is properly sustainable in an action predicated upon a breach of an implied

25 warranty when lack of privity between plaintiff and defendant is disclosed on the face of

26 the complaint."  <u>Anthony v. Kelsey-Hayes Co.</u>, 25 Cal. App. 3d 442, 448 (1972); <u>see also</u>

27 <u>Windham at Carmel Mountain Ranch Assn. v. Superior Ct.</u>, 109 Cal. App. 4th 1162

28 (2003); <u>Blanco</u>, 158 Cal. App. 4th at 1059 n.13 (implied warranty claim dismissed

because plaintiff lacked privity with manufacturer of heart valve implant, and "[b]ecause we conclude there was no privity of contract, we need not decide and express no opinion on the issue of whether section 360k(a) preempts Blanco's breach of implied warranty cause of action"); see generally James v. S. California Edison Co., 94 F.3d 651 (9th Cir. 1996) ("Privity is generally a requirement for implied warranty claims under California law."); Sinclair v. Coachmen Indus., Inc., 951 F.2d 362 (9th Cir. 1991) (claim for breach of "implied warranties of merchantability and fitness" failed where plaintiffs "were not in privity, which California law requires to maintain such claims").

Under the controlling California case law, privity is required for plaintiff's implied warranty claim.  However, plaintiff's opposition states that he purchased the components directly from DePuy without any citation to the complaint.  Opp. at 23.

Accordingly, DePuy's motion to dismiss plaintiff's seventh claim for implied warranty is GRANTED WITH LEAVE TO AMEND.  As explained with respect to plaintiff's express warranty claim, if plaintiff elects to amend his complaint to allege privity, the court requires plaintiff to attach documentary proof of purchase in the form of an invoice, receipt, and/or specific details of payment.

### 9.    Claim 8:  Intentional Misrepresentation

DePuy argues that plaintiff fails to satisfy the Rule 9(b) pleading standard when alleging his claim for intentional misrepresentation because the SAC lacks specifics with respect to how, when, and where any alleged misrepresentation occurred, much less that it was made directly to plaintiff rather than to Dodgin.  Plaintiff argues that his allegations satisfy Rule 9(b).

Plaintiff argues that he alleges DePuy made representations directly to him. Opp. at 19–20 (citing SAC ¶ 165–79).  But the allegations he cites are too general to satisfy Rule 9(b).  Plaintiff alleges, for example, that "DePuy made representations to Plaintiff and his physicians that the DePuy components were a high-quality, safe and effective hip replacement system."  SAC ¶ 165.  Or that DePuy represented to plaintiff and the public that the components were safe and that the marketing materials described

17

1   all risks, even though they actually did not.  SAC ¶¶ 166–68.  The factual allegations are

2   found primarily in paragraphs 165–68 of the SAC, and they are far too general to satisfy

3   the Rule 9(b) standard.  There is no mention of what specific materials plaintiff viewed or

4   what those materials said.  There are vague references to marketing materials that called

5   products safe, but such general recounting of the gist gleaned from unidentified

6   document is not enough to allege an intentional misrepresentation.  Nor are there

7   allegations that DePuy made direct contact with plaintiff.

8          Accordingly, DePuy's motion to dismiss plaintiff's eighth claim for intentional

9   misrepresentation is GRANTED WITH LEAVE TO AMEND.  Plaintiff may amend his

10  complaint to state this cause of action by alleging specific misrepresentations.

11         **10.    Claim 9:  Negligent Misrepresentation**

12         DePuy argues that the Rule 9(b) pleading standard applies to plaintiff's claim of

13  negligent misrepresentation, and that plaintiff fails to satisfy it for the same reasons as his

14  claim for intentional misrepresentation.  Plaintiff does not dispute that Rule 9(b) applies,

15  but he argues that he satisfies the pleading standard.  Opp. at 20–21.

16         For the same reasons plaintiff does not adequately allege an intentional

17  misrepresentation, he fails to allege a negligent misrepresentation with the specificity

18  required by Rule 9(b).  Accordingly, DePuy's motion to dismiss plaintiff's ninth claim for

19  intentional misrepresentation is GRANTED WITH LEAVE TO AMEND.  Plaintiff may

20  amend his complaint to state this cause of action by alleging specific misrepresentations.

21         **11.    Claims 10, 11 & 12:  FAL, CLRA & UCL**

22         The parties address these three claims together in their briefs:  False Advertising

23  Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"), Consumer Legal Remedies Act,

24  Cal. Civ. Code §§ 1750 et seq. ("CLRA"), and Unfair Competition Law, Cal. Bus. & Prof.

25  Code §§ 17200 et seq. ("UCL")

26         **a.    Arguments Relevant to All Three Causes of Action**

27         DePuy argues that the claims sound in fraud, and therefore Rule 9(b) applies, and

28  the allegations are insufficient for the same reasons discussed with respect to the

United States District Court
Northern District of California

18

1    misrepresentation claims.  Plaintiff argues that DePuy's misleading and deceptive

2    advertisements and marketing materials deceived plaintiff and other members of the

3    public by calling the components safe and effective.

4        For the same reasons that plaintiff fails to plead intentional and negligent

5    misrepresentation, he fails to plead his FAL, CLRA, and UCL claims.  Plaintiff's SAC

6    generally refers to advertisements and marketing materials without setting forth any

7    specific details regarding which advertisement and marketing material plaintiff read, when

8    the DePuy Defendants purportedly made the statements directly to plaintiff, where the

9    statements were made, who from the DePuy Defendants purportedly communicated

10   directly with plaintiff to make the statements, and how the statements were made.  In

11   short, the allegations are too general to specifically allege the misconduct.

12       Furthermore, the alleged statements that the components were "safe", "effective",

13   and "high-quality" are "generalized, vague and unspecific assertions, constituting mere

14   'puffery' upon which a reasonable consumer could not rely."  Glen Holly Ent., Inc. v.

15   Tektronix Inc., 343 F.3d 1000, 1015 (9th Cir.), opinion amended on denial of reh'g, 352

16   F.3d 367 (9th Cir. 2003); Glen Holly Ent., Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086,

17   1096–97 (C.D. Cal. 1999) (examples of puffery include:  "provide a price/performance

18   package which is unmatched in the industry today"; "Lightworks systems are still favored

19   by many of Hollywood's top editors"; and the product has a "superior interface").  Such

20   "vague or highly subjective" claims are not actionable.  Sterling Drug, Inc. v. Federal

21   Trade Commission, 741 F.2d 1146, 1150 (9th Cir. 1984).

22       "The common theme that seems to run through cases considering puffery in a

23   variety of contexts is that consumer reliance will be induced by specific rather than

24   general assertions.  Advertising which merely states in general terms that one product is

25   superior is not actionable.  However, misdescriptions of specific or absolute

26   characteristics of a product are actionable.  In Smith–Victor, an advertiser's statement

27   that its lamps were 'far brighter than any lamp ever before offered for home movies' was

28   ruled puffery.  However, when the advertiser quantified numerically the alleged superior

United States District Court
Northern District of California

1    brightness with statements such as '35,000 candle power and 10–hour life,' the court

2    found a potential Lanham Act claim."  Cook, Perkiss & Liehe, Inc. v. N. California

3    Collection Serv. Inc., 911 F.2d 242, 246 (9th Cir. 1990) (citations omitted).

4        An assertion that a product is "safe" or "effective" generally constitutes

5    unactionable puffery "because it does not compare [the product] to any specific

6    competitor by name nor does it explain any basis for the claim."  Southland Sod Farms v.

7    Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997) ("50% Less Mowing" claim is

8    puffery) (internal quotation marks omitted).

9        For the same reason plaintiff does not adequately plead intentional

10   misrepresentation, and because the alleged statements are mere puffery, plaintiff does

11   not adequately plead these causes of action.  Accordingly, DePuy's motion to dismiss

12   plaintiff's tenth, eleventh, and twelfth claims under the FAL, CLRA, and UCL is

13   GRANTED WITH LEAVE TO AMEND.  Plaintiff may amend his complaint to state this

14   cause of action by alleging specific misrepresentations upon which he reasonably relied.

**b.    Arguments Specific to the CLRA**

16       DePuy argues that the CLRA claim should also be dismissed for the independent

17   reason that plaintiff is not a "consumer" who participated in a "consumer transaction"

18   under the statute.  Plaintiff alleges that he satisfies this requirement because he

19   purchased the components directly from DePuy.

20       To bring an action under the CLRA, a "consumer" must bring an action concerning

21   a "good."  A "consumer" is "an individual who seeks or acquires, by purchase or lease,

22   any goods or services for personal, family, or household purposes."  Cal. Civ. Code

23   § 1761(d).  The CLRA also only applies to a consumer "transaction".  Id. § 1770(a).  The

24   CLRA defines a "transaction" as an "agreement" between the consumer and the

25   merchant.  Id. § 1761(e).  Thus, the "CLRA applies . . . only to consumer contracts."  Ting

26   v. AT&T, 319 F.3d 1126, 1148 (9th Cir. 2003) (holding the CLRA is "not a law of general

27   applicability" and has "limited nature" (internal quotation marks omitted)).

28       Here, plaintiff has not alleged that he is a "consumer" who participated in a

United States District Court
Northern District of California

1    "consumer transaction" of the goods at issue, because he does not allege that he

2    purchased the components from DePuy.  Plaintiff argues that he has not alleged that

3    someone else bought the components, but that argument gets the pleading requirement

4    backward.  He must affirmatively plead the elements of his claim, and accordingly he

5    must plead that he is the consumer who participated in a consumer transaction.  He

6    points to no allegation that he purchased the components directly from DePuy.  Compare

7    Opp. at 22–23 with SAC ¶¶ 220–29.

8        For the same reasons that plaintiff fails to plead privity for the warranty claims, he

9    fails to plead that he is a consumer who participated in a consumer transaction with

10   DePuy.  Accordingly, DePuy's motion to dismiss plaintiff's eleventh claim under the CLRA

11   is GRANTED WITH LEAVE TO AMEND.  As explained with respect to plaintiff's warranty

12   claims, if plaintiff elects to amend his complaint to allege a consumer transaction, the

13   court requires plaintiff to attach documentary proof of the purchase in the form of an

14   invoice, receipt, and/or specific details of payment.

15       **12.    Claim 13:  RICO**

16       DePuy argues that plaintiff must meet the Rule 9(b) pleading standard for the

17   RICO claim, and he failed to allege certain RICO elements:  (1) an enterprise; (2) a

18   pattern of racketeering activity; (3) predicate acts; (4) interstate commerce; and

19   (5) statutory standing, in the form of injury to plaintiff's business or property.  Plaintiff

20   argues that he satisfies Rule 9(b)'s requirements.

21           **a.    Enterprise**

22       A RICO "enterprise" is "any individual, partnership, corporation, association, or

23   other legal entity, and any union or group of individuals associated in fact although not a

24   legal entity."  18 U.S.C. § 1961(4).  "[A]n association-in-fact enterprise must have at least

25   three structural features: a purpose, relationships among those associated with the

26   enterprise, and longevity sufficient to permit these associates to pursue the enterprise's

27   purpose."  Boyle v. United States, 556 U.S. 938, 946 (2009).

28       DePuy argues that plaintiff (1) impossibly claims that each defendant is its own

United States District Court
Northern District of California

1   distinct RICO enterprise, which is impossible because a defendant cannot conspire with

2   itself; and (2) argues that all defendants also formed a single enterprise, but alleges no

3   facts supporting its existence.

4         Plaintiff argues that the SAC alleges an enterprise between DePuy and Dodgin.

5   Opp. at 28.  As evidence of the enterprise, plaintiff points to very general allegations that

6   DePuy paid Dodgin to conduct illegal medical trials, and that DePuy made false

7   statements about the risk of the implanted components.  See Opp. at 27–28 (citing SAC

8   ¶¶ 64, 242–44 & 247).

9         Although plaintiff's opposition brief argues that plaintiff wishes to allege and rely

10  upon a DePuy-Dodgin enterprise, the operative complaint does not allege that enterprise.

                        **b.      Pattern of Racketeering Activity**

12        DePuy argues that plaintiff has not pled a pattern of racketeering activity, as two

13  predicate acts must be alleged against each member of the conspiracy.

14        The parties present this issue before discussing individual predicate acts, which

15  this order addresses in the section immediately below.  For the reasons explained below,

16  plaintiff fails to allege any predicate acts as to DePuy or Dodgin with the required

17  particularity, and therefore he has not alleged a pattern of such activity.

                        **c.      Predicate Acts**

19        DePuy argues that plaintiff pleads vague predicate acts of "mail fraud" and "wire

20  fraud", but does not plead them with Rule 9(b)'s required particularity.  Moreover, the

21  pleading generally alleges that the defined term "Defendants" did each predicate act,

22  which fails to allege which particular defendant did which act.

23        Plaintiff points to paragraphs 64 & 242–47 of the SAC as evidence that his

24  pleading satisfies Rule 9(b)'s particularity requirements.

25        Paragraph 64 alleges that "Dodgin and/or John Muir Health" submitted fraudulent

26  claims to insurance.  This allegation does not satisfy plaintiff's burden.  It may be

27  somewhat specific as to content (although it is silent as to time), but the allegation as

28  stated could simply be that John Muir Health undertook that activity alone.  That would be

United States District Court
Northern District of California

entirely irrelevant to plaintiff's alleged enterprise between DePuy and Dodgin.

Paragraphs 242–47 vaguely refer to all "Defendants" who, on information and belief, used the mails and wires to commit fraud.  SAC ¶¶ 242 & 247.  Other allegations concern specific defendants, but do not allege any activity over the mails or wires.  SAC ¶¶ 243–44 (e.g., DePuy paid Dodgin).

Given the above general and vague allegations, the complaint does not offer any specific allegations as to what defendant used the mail or wires, what specific impermissible conduct was carried out over the wires or mail, or when such conduct occurred.  These vague and general allegations cannot be said to satisfy Rule 9(b)'s pleading requirements.

### d.      Statutory Standing—Injury to Business or Property

DePuy argues that plaintiff fails to allege injury to his business or property, and that courts use this requirement to bar RICO claims alleged alongside product liability claims.  Plaintiff argues that the harms he alleges amount to intentional interference with contract and interference with prospective business relations, both of which are established torts under California law.  He points to allegations in the complaint that he had to pay for doctors, he has been unable to attend regular employment, and his earning capacity has been diminished.  SAC ¶¶ 83–84.

### i.      Legal Standard

Under RICO, "[a]ny person injured **in his business or property** by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court".  18 U.S.C. § 1964(c) (emphasis added).

"[T]o establish statutory standing pursuant to RICO, a plaintiff must show . . . that his alleged harm qualifies as injury to his business or property".  Shulman v. Kaplan, 58 F.4th 404, 410 (9th Cir. 2023) (internal quotation marks omitted).  "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO."  Diaz v. Gates, 420 F.3d 897, 900 (9th Cir. 2005); Glob. Master Int'l Grp., Inc. v.

United States District Court
Northern District of California

1   Esmond Nat., Inc., 76 F.4th 1266, 1274 (9th Cir. 2023) ("plaintiff must demonstrate

2   (1) harm to a specific property interest cognizable under state law, and (2) that the injury

3   resulted in concrete financial loss") (internal quotation marks and citations omitted); City

4   of Almaty v. Khrapunov, 956 F.3d 1129, 1132 (9th Cir. 2020) ("To state a claim under

5   RICO, a plaintiff is required to show harm to a specific business or property interest, an

6   inquiry 'typically determined by reference to state law.'") (quoting Diaz, 420 F.3d at 900).

7   Harm to a property interest recognized under state law is critical to statutory standing.

8   "Financial losses, in and of themselves, are insufficient to confer standing under RICO."

9   Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 364 (9th Cir. 2005);

10  see also Almaty, 956 F.3d at 1132 ("no state law indicating that voluntary expenditures to

11  track down stolen property constitutes a separate injury to property").

12      "A civil RICO injury also requires proof of concrete financial loss, not mere injury to

13  a valuable intangible property interest.  Our caselaw has established a low threshold for

14  plaintiffs to show a concrete RICO injury.  We have found that allegations of a legal

15  entitlement to business relations unhampered by schemes prohibited by the RICO

16  predicate statutes and loss of a future employment opportunity constitute RICO injuries to

17  property.  Courts have also found that the overpayment of money is a tangible injury."

18  Glob. Master Int'l Grp., 76 F.4th at 1274 (internal quotations marks and citations omitted).

19      This Circuit—looking to California state law—has recognized numerous categories

20  of financial loss as injury to business or property sufficient to allege statutory standing.

21  For example, the Ninth Circuit has recognized that allegations of false incarceration

22  allege harms amounting to "intentional interference with contract and interference with

23  prospective business relations, which are torts under California law that constitute injury

24  to business or property under RICO."  Guerrero v. Gates, 442 F.3d 697, 707–08 (9th Cir.

25  2006) ("Guerrero alleged that he was 'unable to pursue gainful employment while

26  defending himself against unjust charges and/or while unjustly incarcerated' and that he

27  'suffered a material diminishment of his employment prospects by virtue of the unjust and

28  unconstitutional conviction.'") (quoting Diaz, 420 F.3d at 898); see also Diaz, 420 F.3d at

24

1    898 (allegations of "lost employment, employment opportunities, and the wages and

2    other compensation associated with said business, employment and opportunities, in that

3    [plaintiff] was rendered unable to pursue gainful employment while defending himself

4    against unjust charges and while unjustly incarcerated" were sufficient to confer RICO

5    standing.) (internal quotation marks omitted).  However, where plaintiff could not have

6    legally obtained work, there is no interference with potential employment and therefore no

7    statutory standing.  Avalos v. Baca, 596 F.3d 583, 594 (9th Cir. 2010) (no harm to

8    business or property interest where detained individual was "not a United States citizen

9    and does not have a work visa").

10        The Ninth Circuit has also found statutory standing where a plaintiff "spent time

11   away from her usual work and paid an assistant to help her research and compile records

12   responding to a fraudulent allegation.  This amounted to a loss to business or property

13   sufficient to confer standing."  Just Film, Inc. v. Buono, 847 F.3d 1108, 1113 & 1119 (9th

14   Cir. 2017) (plaintiff "alleges she spent several hours of her normal work time investigating

15   the claims in the letter and paid an employee $7.50 to investigate the claims").

16        As another example, the Ninth Circuit has found that improper litigation conduct

17   resulting in a party accepting a deflated settlement amount is sufficient to confer RICO

18   standing based on the state-law tort of fraudulent inducement.  Living Designs, 431 F.3d

19   at 364 ("The harm Plaintiffs allege is fraudulent inducement, which is actionable under

20   Hawai'i law.  The financial loss Plaintiffs claim is that they settled their claims for a

21   smaller percentage of their alleged damages than they could have received absent

22   DuPont's fraudulent inducement." (citation omitted)).

23        A plaintiff must also "satisfy the proximate cause inquiry."  That is, he must show

24   that the RICO claim's predicate act "was the actual cause of" the injury to property.

25   "Proximate cause requires 'some direct relation between the injury asserted and the

26   injurious conduct alleged.'"  Almaty, 956 F.3d at 1133 (quoting Holmes v. Secs. Inv'r Prot.

27   Corp., 503 U.S. 258, 268 (1992)).

28                      ii.    Analysis

United States District Court
Northern District of California

1        DePuy argues that RICO injury specifically exempts products liability cases, but

2  that argument misconstrues the controlling precedent.  DePuy points to out-of-state

3  district court orders containing short discussions stating the general rule that personal

4  injury damages do not establish statutory standing for RICO.  But those orders turn on

5  the fact that the alleged damages were for personal injuries—the fact that the cause of

6  action might be a product liability claim was irrelevant to the holding.  Contrary to

7  defendant's argument, RICO claims may viably accompany product liability claims if the

8  plaintiff adequately pleads each.

9        Plaintiff must allege some injury to business or property based on California law.

10  Plaintiff's complaint facially alleges expenses in the form of follow-on medical care, lost

11  wages, and lost earning capacity.  E.g., SAC ¶¶ 80–85; see also, e.g., id. ¶¶ 93, 113, 127

12  & 138.  Those harms could satisfy the proximate cause and injury to property

13  requirements sufficient to confer statutory standing if plaintiff were able to allege the

14  California tort(s) that form(s) the basis of his damaged property right with specificity, and

15  how the injuries relate to the torts.  That is especially the case with SAC ¶ 84, where

16  plaintiff alleges lost earning capacity.  Those allegations track closely with lost earning

17  allegations due to false imprisonment that conferred statutory standing in Guerrero, 442

18  F.3d at 707 and Diaz, 420 F.3d at 898.

19        Accordingly, Depuy's motion to dismiss plaintiff's thirteenth claim under RICO is

20  GRANTED WITH LEAVE TO AMEND to allege facts supporting the existence of the

21  DePuy-Dodgin enterprise, facts showing a pattern of racketeering activity, predicate acts

22  undertaken by DePuy and Dodgin, and the California tort(s) that form(s) the basis of

23  plaintiff's damaged property right with specificity and how the injuries relate to the torts.

24      **13.**    **Punitive Damages**

25        DePuy seeks to dismiss the request for punitive damages.  It argues that a claim

26  for punitive damages requires conduct ratified by an officer, director, or manager of the

27  corporation, and that is a substantive element of a punitive damages claim that must be

28  pleaded in a complaint and supported by factual averments.  Plaintiff argues that his

United States District Court
Northern District of California

RICO claim supports punitive damages.

This court declines to dismiss plaintiff's notice of a remedy he will seek at trial at this early motion to dismiss stage.  See, e.g., Smith v. Santa Cruz, No. 5:21-CV-00421-EJD, 2023 WL 8360054, at *5 (N.D. Cal. Dec. 1, 2023) ("While district court opinions can vary on this matter, the Court's holding is widely shared by many district courts in this Circuit. . . .  Plaintiffs' prayer for punitive relief is not an independent claim; it is a remedy where the Court has found the underlying claim is well-plead.  Therefore, the Court will not address Lazar's arguments regarding striking Plaintiffs' prayer for punitive relief under his 12(b)(6) theory."); Oppenheimer v. Southwest Airlines Co., No. 13-CV-260-IEG (BGS), 2013 WL 3149483 at *4 (S.D. Cal. June 13, 2013) ("Because punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed. R. Civ. P. 12(b)(6)."); Leon-Calderon v. Old Dominion Freight Line, Inc., No. 2:22-CV-08930-MCS-KS, 2023 WL 1931328, at *6 (C.D. Cal. Feb. 10, 2023) ("Rule 12(b)(6) is not an appropriate vehicle to attain dismissal of a remedy sought in a pleading."); Kev & Cooper, LLC v. Furnish My Place, LLC, No. 820CV01509MCSKES, 2021 WL 6618745, at *3 (C.D. Cal. Nov. 28, 2021) ("Neither Rule 12(b)(6) nor Rule 12(f) authorizes dismissal of a prayer for damages in a pleading.").

Accordingly, because a claim for failure to warn remains, which could theoretically support an award of punitive damages, DePuy's motion to dismiss or strike plaintiff's election of a punitive damages remedy is DENIED.

### 14.   Requests for Judicial Notice

#### a.   DePuy's Request

DePuy asks the court to take judicial notice of a publicly-available FDA document entitled "SUMMARY OF SAFETY AND EFFECTIVENESS DATA (SSED)" concerning the Pinnacle CoMplete Acetabular Hip System.  RJN, Dkt. 54.  Plaintiff does not oppose the request.  This publicly-available document prepared by the FDA is appropriate to take judicial notice of, particularly for what DePuy seeks to show:  that "DePuy applied for

1    premarket approval of the Pinnacle CoM Device in 2009." Mot. at 5. DePuy's request for

2    judicial notice is GRANTED.

3                    **b.      Plaintiff's Request**

4         Plaintiff asks the court to take judicial notice of an FDA document titled "Pinnacle

5    Complete Acetabular Hip System Withdrawal on 09/05/2013." Dkt. 80. Defendants

6    argue that the document is irrelevant, but they do not oppose the request in substance.

7    As with DePuy's submission, plaintiff's request contains an FDA document that can be

8    taken notice of. Plaintiff's request for judicial notice is GRANTED.

9                                **CONCLUSION**

10        For the foregoing reasons, DePuy's motion to dismiss is GRANTED IN PART and

11   DENIED IN PART as described in this order. Plaintiff may file an amended complaint

12   within 28 days of the date of this order. If plaintiff files a third amended complaint, all

13   defendants in the action, including Dr. Dodgin, shall file responses no later than 21 days

14   thereafter. No new parties or causes of action may be pleaded without leave of court or

15   the agreement of all defendants.

16        **IT IS SO ORDERED.**

17   Dated:  July 23, 2024

18                                    /s/ Phyllis J. Hamilton
                                      _____
19                                    PHYLLIS J. HAMILTON
                                      United States District Judge
20

21

22

23

24

25

26

27

28