UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MULDOON,<br>        Plaintiff,<br>    v.<br>DEPUY ORTHOPAEDICS, INC., et al.,<br>        Defendants. | Case No. 15-cv-02723-PJH<br><br>**ORDER GRANTING DEPUY DEFENDANTS' MOTION TO DISMISS**<br>Re: Dkt. No. 104 |

Before the court is defendants Medical Device Business Services, Inc. f/k/a DePuy Orthopaedics, Inc., DePuy, Inc., Johnson & Johnson, Johnson & Johnson Services, Inc., and Johnson & Johnson International's (collectively, "DePuy" or the "DePuy Defendants") motion to dismiss plaintiff's fourth, fifth, sixth, seventh, and eighth causes of action as alleged against them in the Third Amended Complaint ("TAC", Dkt. 90). Defendants filed their motion on January 8, 2025. Plaintiff has declined to file any opposition to the motion, and the deadline to do so has passed. The matter is therefore fully briefed and suitable for decision without oral argument. Accordingly, the hearing set for March 6, 2025, is VACATED. Having read defendants' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This action was filed by plaintiff John Muldoon on June 17, 2015, as a class action. Dkt. 1. With motions to dismiss pending, the lawsuit was removed to the Multi-District Litigation and stayed. Dkt. 21. The case was remanded back to this court on

January 17, 2023.  Dkt. 26.  Plaintiff filed a second amended complaint ("SAC") on July 14, 2023, eliminating the class allegations.  Dkt. 42.

The SAC alleged eighteen causes of action against numerous defendants, all relating to damages plaintiff alleges he suffered from his hip-replacement surgery conducted in 2007.  The named defendants were Dr. David Dodgin, M.D. (the surgeon who performed the hip implant procedure in 2007), John Muir Health (the facility at which the 2007 procedure was performed),[1] and Medical Device Business Services, Inc. f/k/a DePuy Orthopaedics, Inc., DePuy, Inc., Johnson & Johnson, Johnson & Johnson Services, Inc., and Johnson & Johnson International (the entities responsible for producing and/or manufacturing the hip components that were used).

The SAC alleged the following causes of action against the DePuy Defendants: (1) negligence; (2) strict product liability, manufacturing defect; (3) strict product liability, design defect; (4) strict product liability, failure to warn; (5) strict product liability, failure to test; (6) strict product liability, breach of express warranty; (7) strict product liability, breach of implied warranty; (8) fraud, intentional misrepresentation; (9) negligent misrepresentation; (10) false advertising; (11) violation of consumer legal remedies act; (12) violation of unfair competition law; and (13) civil RICO.

On January 19, 2024, DePuy filed a motion to dismiss all causes of action alleged against them.  Dkt. 53.  The court denied the motion with respect to the first cause of action for negligence; denied the motion with respect to the second cause of action for manufacturing defect; granted the motion with respect to the third cause of action for design defect and dismissed it with prejudice; denied the motion with respect to the fourth cause of action for failure to warn; granted the motion with respect to the fifth cause of action for failure to test and dismissed it with prejudice; granted the motion with respect to the sixth cause of action for express warranty and dismissed it with leave to amend; granted the motion with respect to the seventh cause of action for implied warranty and

---

[1] John Muir Health has since been dismissed from the case.  Dkt. 74.

1  dismissed it with leave to amend; granted the motion with respect to the eighth cause of
2  action for intentional misrepresentation and dismissed it with leave to amend; granted the
3  motion with respect to the ninth cause of action for negligent misrepresentation and
4  dismissed it with leave to amend; granted the motion with respect to the tenth, eleventh,
5  and twelfth causes of action under the FAL, CLRA, and UCL with leave to amend; and
6  granted the motion with respect to the thirteenth cause of action under RICO and
7  dismissed it with leave to amend.  Order, Dkt. 84 ("SAC Order").

8        On October 18, 2024, plaintiff filed his third amended complaint.  Dkt. 90.  On
9  January 8, 2025, the DePuy Defendants filed the present motion to dismiss the fourth
10 (express warranty), fifth (implied warranty), sixth (intentional misrepresentation), seventh
11 (negligent misrepresentation), and eighth (RICO) causes of action as alleged against
12 them.  Mot., Dkt 104.  Plaintiff failed to timely oppose the motion or submit a statement of
13 non-opposition.  The DePuy Defendants submitted a Reply brief and an accompanying
14 declaration indicating that plaintiff's counsel was aware of his failure to timely oppose the
15 motion.  See Reply, Dkt. 108; Declaration of Ryan H. Chan in Support of Reply & Ex. A,
16 Dkts. 108-1 & 108-2.  On February 20, 2025—29 days after the deadline to file an
17 opposition or statement of nonopposition had passed—plaintiff filed a motion to extend
18 the time to oppose.  Dkt. 112.

19 **DISCUSSION**

20 **A.    Legal Standard**

21       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the
22 legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, 349 F.3d 1191,
23 1199–1200 (9th Cir. 2003).  A complaint may be dismissed if the plaintiff fails to state a
24 cognizable legal theory or has not alleged sufficient facts to support a cognizable legal
25 theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

26       While the court accepts as true all factual allegations in the complaint, legally
27 conclusory statements not supported by actual factual allegations need not be accepted.
28 Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer sufficient

facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679.

Claims that sound in fraud must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (internal quotation marks omitted). "Allegations of fraud under [RICO] section 1962(c) 'must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme.'" Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 541 (9th Cir. 1989) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint and no party questions its authenticity. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007). The court may also consider matters that are properly the subject of judicial notice. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001).

Federal Rule of Civil Procedure 15(a)(1) entitles a plaintiff the right to "amend its pleading once as a matter of course" before responsive pleadings are filed. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing

1   party's written consent or the court's leave.  The court should freely give leave when
2   justice so requires." Fed. R. Civ. P. 15(a)(2).
3         If dismissal is warranted, it is generally without prejudice unless it is clear that the
4   complaint could not be saved by amendment.  Polich v. Burlington N., Inc., 942 F.2d
5   1467, 1472 (9th Cir. 1991).  Denial of leave to amend is appropriate "where the district
6   court could reasonably conclude that further amendment would be futile." Sylvia
7   Landfield Tr. v. City of Los Angeles, 729 F.3d 1189, 1196 (9th Cir. 2013) (quoting
8   Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1530 (9th Cir. 1995)).  "Leave to amend may also
9   be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v.
10  AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).  Further, dismissal with
11  prejudice is appropriate "when the movant presented no new facts but only 'new theories'
12  and 'provided no satisfactory explanation for his failure to fully develop his contentions
13  originally.'" Allen v. City of Beverly Hills, 911 F.2d 367, 374 (9th Cir. 1990) (quoting
14  Vincent v. Trend Western Technical Corp., 828 F.2d 563, 570–71 (9th Cir. 1987)).

**B.   Analysis**

    **1.   Claim 4:  Express Warranty**

DePuy argues that plaintiff fails to state a claim for breach of express warranty because he does not plead privity of contract with DePuy.  This court explained in its previous order granting DePuy's motion to dismiss plaintiff's express warranty cause of action that privity is required unless plaintiff adequately pleads California's well-recognized exception wherein the manufacturer made claims directly to him on which he relied.  SAC Order at 13–16.  The dismissal order granted plaintiff leave to "amend his complaint to state this cause of action by alleging either (1) that he purchased the device directly from DePuy and therefore has privity, as he argues in his opposition; or (2) that he read and relied on specific statements made by DePuy. . . . Under the second option, the court requires plaintiff to allege with specificity the particular statements he relied upon, who made those statements, when and where they were made, how they were presented to him, and in what manner he relied upon them." Id. at 16.

Although plaintiff's opposition to DePuy's earlier motion to dismiss the SAC argued that he purchased the components directly from DePuy (Opp. to DePuy's Mtn. to Dismiss SAC, Dkt. 79 ("SAC Opp.") at 23 ("The Depuy Components were . . . sold directly to Mr. Muldoon.")), plaintiff does not make that allegation in his TAC or otherwise allege privity.  Plaintiff has, however, added allegations stating that "Dodgin warranted the hip implant system was safe and effective as a hip replacement system" and that plaintiff relied on Dodgin's expertise to select an implant.  TAC ¶¶ 137–38 & 150.  Although plaintiff's TAC now alleges statements made directly to him upon which he relied, he has still failed to allege that the *manufacturer* made any such claims.  Instead, he alleges that his treating physician, Dr. Dodgin, represented that the implant was safe and effective.  Id.  Such third-party representations are insufficient to satisfy the exception to California's privity requirement wherein the manufacturer makes claims directly to a consumer.[2]

Denial of leave to amend is appropriate "where the district court could reasonably conclude that further amendment would be futile" (Sylvia Landfield, 729 F.3d at 1196), "for repeated failure to cure deficiencies by previous amendment" (Abagninin, 545 F.3d at 742), and "when the movant presented no new facts but only 'new theories' and 'provided no satisfactory explanation for his failure to fully develop his contentions originally'" (Allen, 911 F.2d at 374).  Here, dismissal with prejudice is appropriate for each of those reasons.

First, the court finds that further amendment would be futile.  In opposition to the last motion to dismiss, plaintiff argued that he was in privity with the manufacturer and that he could amend his complaint to allege that he purchased the device directly from DePuy.  Plaintiff failed to do so on amendment, and continued attempts to show privity

---

[2] Although plaintiff has failed to offer any argument in opposition, plaintiff might argue that his allegation that Dr. Dodgin was "employed by Depuy in designing, developing, marketing, and promoting the medical devices Dodgin implanted into Mr. Muldoon" imputes Dodgin's statements to DePuy.  TAC ¶ 20; see also id. ¶ 67.  But such bare assertions that Dodgin was employed by and warranted the hip implant "on behalf of Depuy" (id. ¶¶ 137 & 150) are no more than legally conclusory statements unsupported by actual factual allegations, and the court need not accept them as true.  See Iqbal, 556 U.S. at 678–79.

1  with the manufacturer are likely to be futile.  Plaintiff has similarly failed to identify any
2  statements made by the manufacturer on which he relied, much less specific statements
3  alleged with the requisite particularly necessary to state a claim.  Continued attempts to
4  allege such statements are also likely to be futile.
5        Second, plaintiff has made repeated attempts to cure these exact deficiencies and
6  failed to do so.  The court's most recent order permitting amendment spelled out in detail
7  the specific allegations plaintiff was required to make (and supporting materials that must
8  be submitted) to allege an express warranty cause of action, and he failed to satisfy
9  those requirements.
10        Third, plaintiff has only presented new theories in support of this cause of action,
11  not new facts.  He now alleges that his treating physician was employed by the
12  manufacturer and made representations about the quality of the device "on behalf" on the
13  manufacturer, but these are bare legal assertions advancing a new theory of liability
14  unsupported by amended factual allegations.
15        For the foregoing reasons, the court GRANTS the DePuy Defendant's motion to
16  dismiss plaintiff's express warranty cause of action WITH PREJUDICE.
17        **2.**    **Claim 5:  Implied Warranty**
18        DePuy argues that plaintiff fails to state a claim for breach of implied warranty
19  because he does not plead privity of contract with DePuy.  This court explained in its
20  previous order granting DePuy's motion to dismiss plaintiff's implied warranty cause of
21  action that privity is required.
22        "It is settled law in California that privity between the parties is a necessary
23  element to recovery on a breach of an implied warranty of fitness for the buyer's use . . . .
24  A demurrer is properly sustainable in an action predicated upon a breach of an implied
25  warranty when lack of privity between plaintiff and defendant is disclosed on the face of
26  the complaint." Anthony v. Kelsey-Hayes Co., 25 Cal. App. 3d 442, 448 (1972); see also
27  Windham at Carmel Mountain Ranch Assn. v. Superior Ct., 109 Cal. App. 4th 1162
28  (2003); Blanco v. Baxter Healthcare Corp., 158 Cal. App. 4th 1039, 1059 n.13 (2008)

7

1  (implied warranty claim dismissed because plaintiff lacked privity with manufacturer of
2  heart valve implant); see generally James v. S. California Edison Co., 94 F.3d 651 (9th
3  Cir. 1996) ("Privity is generally a requirement for implied warranty claims under California
4  law."); Sinclair v. Coachmen Indus., Inc., 951 F.2d 362 (9th Cir. 1991) (claim for breach of
5  "implied warranties of merchantability and fitness" failed where plaintiffs "were not in
6  privity, which California law requires to maintain such claims").

Plaintiff's TAC does not allege facts demonstrating that he is in privity with any of the DePuy Defendants. Although plaintiff stated that he purchased the components directly from DePuy in his opposition to DePuy's previous motion to dismiss (SAC Opp. at 23), neither the SAC nor the TAC include any such factual allegations. In granting leave to amend the SAC, the court permitted plaintiff to assert this cause of action again only if plaintiff alleged privity by "attach[ing] documentary proof of purchase in the form of an invoice, receipt, and/or specific details of payment." SAC Order at 16. Plaintiff failed to do so, and the court concludes that further amendment would be futile.

Accordingly, and additionally for the reasons discussed above with respect to plaintiff's express warranty cause of action, DePuy's motion to dismiss plaintiff's fifth cause of action for implied warranty is GRANTED and the cause of action is DISMISSED WITH PREJUDICE.

### 3.     Claim 6:  Intentional Misrepresentation

DePuy argues that plaintiff fails to satisfy the heightened Rule 9(b) pleading standard when alleging his claim for intentional misrepresentation because the TAC lacks specifics with respect to how, when, and where any alleged misrepresentation occurred. DePuy also argues that the complaint fails to allege which defendant made each misrepresentation, and that it inadequately pleads Dodgin's alleged employment with a specific DePuy defendant.

The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996).

8

1  "Each element of a fraud count must be pleaded with particularity so as to apprise the
2  defendant of the specific grounds for the charge and enable the court to determine
3  whether there is any basis for the cause of action". Chapman v. Skype Inc., 220 Cal.
4  App. 4th 217, 231 (2013).

5        Principals are liable for the tortious acts of their agents committed within the scope
6  of the agency. Holley v. Crank, 400 F.3d 667, 673 (9th Cir. 2004). "To allege an agency
7  relationship, a plaintiff must allege: (1) that the agent or apparent agent holds power to
8  alter legal relations between principal and third persons and between principal and
9  himself; (2) that the agent is a fiduciary with respect to matters within scope of agency;
10 and (3) that the principal has right to control conduct of agent with respect to matters
11 entrusted to him." Palomares v. Bear Stearns Residential Mortg. Corp., No.
12 07CV01899WQHBLM, 2008 WL 686683, at *4 (S.D. Cal. Mar. 13, 2008) (citing Garlock
13 Sealing Techs., LLC v. NAK Sealing Techs. Corp., 148 Cal. App. 4th 937, 964 (2007), as
14 modified on denial of reh'g (Apr. 17, 2007)). "When a plaintiff alleges that a defendant is
15 liable for intentional misrepresentation under either an agency or civil conspiracy theory,
16 Rule 9(b) requires that the plaintiff allege with particularity facts that support the existence
17 of an agency relationship or civil conspiracy." Id. (citing Swartz v. KPMG LLP, 476 F.3d
18 756, 764–65 (9th Cir. 2007); accord Jackson v. Fischer, 931 F. Supp. 2d 1049, 1061
19 (N.D. Cal. 2013) ("where a plaintiff alleges that a defendant is liable for fraud under an
20 agency theory, Rule 9(b) requires that the existence of the agency relationship be pled
21 with particularity"); see also Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003,
22 407 F. Supp. 3d 1051, 1070 (D. Haw. 2019) ("It is not enough to allege generally and in
23 conclusory terms that the various Defendants have agency relationships."); Eversource
24 Cap. LP v. Fimrite, No. CV-18-02583-PHX-SMM, 2019 WL 11638377, at *5 (D. Ariz. May
25 21, 2019) ("where fraud allegations against a defendant depend upon an . . . agency
26 relationship, the plaintiff must plead with particularity the facts establishing that
27 relationship"); RPost Holdings, Inc. v. Trustifi Corp., No. CV 10-1416 PSG (SHX), 2012
28 WL 12957060, at *3 (C.D. Cal. Mar. 1, 2012) ("a complaint sounding in fraud must plead

an agency relationship with particularity per Fed. R. Civ. P. 9(b)"); Donovan v. Flamingo Palms Villas, LLC, Case No. 08-CV-01675-RCJ-RJJ, 2009 WL 10693913, at *13 (D. Nev. June 23, 2009) ("Rule 9(b) requires that the plaintiff allege with particularity facts that support the existence of an agency relationship").

Plaintiff alleges that Dodgin, as "the agent of Depuy . . . made representations to Mr. Muldoon that the DePuy Components were a high-quality, safe and effective hip replacement system, knowing these intentional misrepresentations of fact were false." TAC ¶ 162. He also alleges that "[w]hile Dr. Dodgin was in the employ of Depuy, on behalf of Depuy, and in the days leading up to Mr. Muldoon's 2007 surgery, Dodgin informed Mr. Muldoon he had selected a hip implant device for Mr. Muldoon made by JOHNSON AND JOHNSON and/or a subsidiary thereof comprised of a metal-on-metal configuration . . . was safe and effective as a hip replacement system, was 'state of the art,' and would last for 15 to 20 years." Id. ¶¶ 137 & 150. He also alleges: "Dodgin actively consulted with DePuy Orthopaedics between at least 1999 through 2011 and receives massive financial benefits from this arrangement. Depuy entered into a contractual relationship with Dr. Dodgin, whereby Dr. Dodgin was paid (and continues to be paid) substantial sums of money to promote DePuy's products and to assist DePuy with marketing efforts to patients and other surgeons." Id. ¶ 70. Plaintiff elsewhere alleges that "each and every Defendant was the agent or employee of each and every other Defendant" (id. ¶ 10), that "[a]ll actions of each of the Defendants . . . were ratified and approved by the officers or managing agents of every other Defendant" (id.), and that "[s]ince at least 1999 and continuing to the present, Dr. Dodgin was actively employed by Depuy in designing, developing, marketing, and promoting the medical devices Dodgin implanted into Mr. Muldoon" (id. ¶ 20).

Plaintiff's SAC relied upon unspecified marketing materials produced by the DePuy Defendants that he allegedly reviewed and relied upon, but his TAC now refers only to "advertisements for the *other Johnson and Johnson products* Mr. Muldoon had used over the course of his life". Id. ¶¶ 68, 164 & 186 (emphasis added). The operative

10

1 complaint now relies instead on statements allegedly made by Dodgin acting in the
2 capacity of "DePuy's" agent.  But plaintiff alleges that Dodgin made such statements only
3 on behalf of the defined term "Depuy", which includes five distinct entities.  See id. ¶¶ 7
4 (defining "DePuy") & 162–64 (alleging agency relationship).  Plaintiff also alleges that
5 Dodgin "actively consulted with DePuy Orthopaedics", but that does not assert an agency
6 relationship.  See id. ¶¶ 70, 122.  In any event, each allegation concerning Dodgin's
7 statements merely asserts that he was acting as an agent of the defined multi-entity term
8 "DePuy" when making them—not any individual defendant.  Plaintiff's pleading is
9 inadequate because "Rule 9(b) does not allow a complaint to merely lump multiple
10 defendants together but requires plaintiffs to differentiate their allegations when suing
11 more than one defendant and inform each defendant separately of the allegations
12 surrounding his alleged participation in the fraud."  Swartz, 476 F.3d at 764–65 (internal
13 quotation marks omitted).  Plaintiff's general allegations fail to allege an agency
14 relationship under Rule 9(b)'s pleading requirements, and they are not "specific enough
15 to give defendants notice of the particular misconduct which is alleged".  Id. at 764.
16 Accordingly, plaintiff has failed to adequately allege any misrepresentation made by a
17 DePuy Defendant.
18      Denial of leave to amend is appropriate "where the district court could reasonably
19 conclude that further amendment would be futile" (Sylvia Landfield, 729 F.3d at 1196),
20 "for repeated failure to cure deficiencies by previous amendment" (Abagninin, 545 F.3d at
21 742), and "when the movant presented no new facts but only 'new theories' and 'provided
22 no satisfactory explanation for his failure to fully develop his contentions originally'"
23 (Allen, 911 F.2d at 374).  Here, dismissal with prejudice is appropriate for each of those
24 reasons.
25      The court finds that further amendment would be futile.  In opposition to DePuy's
26 motion to dismiss the SAC, plaintiff argued that DePuy made representations directly to
27 him and Dodgin and that DePuy made false representations in advertising materials.
28 SAC Opp. at 19–20 (citing SAC ¶¶ 165–79).  In granting leave to amend, the court

required plaintiff to allege specific misrepresentations. However, rather than allege specific misrepresentations made by any DePuy Defendant, plaintiff instead alleged statements made by Dodgin. The court accordingly finds that continued attempts to allege misrepresentations made by a DePuy Defendant are likely to be futile.

Additionally, plaintiff has only presented new theories in support of this cause of action, not new facts. He now alleges that his treating physician—no longer a DePuy Defendant—made misrepresentations "on behalf" of the manufacturer, but these are bare legal assertions advancing a new theory of liability unsupported by amended factual allegations.

Accordingly, DePuy's motion to dismiss plaintiff's sixth cause of action for intentional misrepresentation is GRANTED and the cause of action is DISMISSED WITH PREJUDICE.

### 4. Claim 7: Negligent Misrepresentation

DePuy argues that the Rule 9(b) pleading standard applies to plaintiff's claim of negligent misrepresentation, and that plaintiff fails to satisfy it for the same reasons as his claim for intentional misrepresentation.

"The elements of negligent misrepresentation are the same [as fraud] except for the second element, which for negligent misrepresentation is the defendant made the representation without reasonable ground for believing it to be true." West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780, 792 (2013). "A negligent misrepresentation claim 'requires a positive assertion,' not merely an omission." Lopez v. Nissan N. Am., Inc., 201 Cal. App. 4th 572, 596 (2011) (quoting Vega v. Jones, Day, Reavis & Pogue, 121 Cal. App. 4th 282, 291 n.6 (2004)); accord Wilson v. Century 21 Great W. Realty, 15 Cal. App. 4th 298, 306 (1993).

For the same reasons plaintiff does not adequately allege an intentional misrepresentation cause of action, he fails to allege negligent misrepresentation with the specificity required by Rule 9(b). The considerations with respect to whether leave to amend is appropriate are also identical. Accordingly, DePuy's motion to dismiss

12

plaintiff's seventh cause of action for negligent misrepresentation is GRANTED and the cause of action is DISMISSED WITH PREJUDICE.

### 5. Claim 8: RICO

"To state a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" Abcarian v. Levine, 972 F.3d 1019, 1028 (9th Cir. 2020) (quoting Grimmett v. Brown, 75 F.3d 506, 510 (9th Cir. 1996)).

DePuy argues that plaintiff's complaint fails to state a RICO claim as a matter of law because it fails to allege an enterprise, predicate acts, a pattern of racketeering, an impact on interstate commerce, and injury to property or business. The court turns first to predicate acts.

Plaintiff alleges that DePuy committed predicate acts by engaging in mail fraud and wire fraud. See, e.g., TAC ¶¶ 204 & 210. In opposing Dodgin's motion to dismiss the RICO claim alleging a common fraudulent scheme, plaintiff relied exclusively on his allegations of mail fraud and wire fraud as the applicable predicate acts. Dkt. 103 at 10. Likewise, plaintiff's opposition to DePuy's motion to dismiss the SAC relied on mail fraud and wire fraud as predicate acts. See SAC Opp. at 24–28.

Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 658 (2008) (citing 18 U.S.C. § 1341). "The elements of mail fraud and wire fraud are essentially identical: the government must show (1) a scheme to defraud, (2) the use of either the mail or wire, radio, or television to further the scheme, and (3) the specific intent to defraud." United States v. Brugnara, 856 F.3d 1198, 1207 (9th Cir. 2017). "[W]ire fraud requires the intent to deceive *and* cheat — in other words, to deprive the victim of money or property by means of deception." United States v. Miller, 953 F.3d 1095, 1103 (9th Cir. 2020).

13

"Federal Rule of Civil Procedure 9(b) requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.  The Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud."  Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir. 1991) (citation omitted) (allegations that defendant "used the mails to submit claims for reimbursement to state and federal health care financing agencies for services rendered to patients . . . pursuant to illegal kickback schemes" were "insufficient" where "no specific mailings are mentioned").  Moreover, "the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation."  Miscellaneous Serv. Workers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir. 1981); accord Schreiber Distributing Co. v. Serv-Well Furniture, 806 F. 2d 1393, 1401 (9th Cir. 1986) (same).

The TAC's allegations concerning the particular acts of mail and wire fraud are too general and lacking in detail to satisfy the heightened pleading requirements of Rule 9(b).  For example, the complaint does not allege the timeframe during which all "Defendants utilized the U.S. Mail and wires to exchange money, written agreements between them and the hospitals to which Depuy sold its medical devices, transmitted fraudulent and fabricated clinical data and marketing materials to each other and to victims".  TAC ¶ 210.  Nor has plaintiff alleged the identities of those involved in any transmissions nor which defendant did which act.  Plaintiff merely alleges that all parties encompassed in the defined term "Defendants" engaged in the activities with other abstract collective entities such as "hospitals" and "patients".  Id.  Such vagueness and lack of specificity as to who sent and received the offending transmissions—much less what content the offending transmissions contained beyond general allegations of "written agreements" and "fabricated clinical data" (id.)—fail to satisfy Rule 9(b)'s requirement that plaintiff's allegations be made "with particularity".  Fed. R. Civ. P. 9(b); see Miscellaneous Serv. Workers, 661 F.2d at 782 ("pleader must state . . . the identities of the parties to the

1   misrepresentation"); Schreiber Distributing Co., 806 F. 2d at 1401 (same).

2       At bottom, the pleading assumes—rather than alleging with particularity—that
3   each DePuy Defendant must have transmitted some false information over the mail and
4   wires to advance their alleged scheme.  But such abstract pleading based on
5   suppositions rather than particular circumstances fails to satisfy Rule 9(b)'s pleading
6   requirements.  See Lancaster Cmty. Hosp., 940 F.2d at 405 (allegations that defendant
7   "used the mails to submit claims for reimbursement to state and federal health care
8   financing agencies for services rendered to patients . . . pursuant to illegal kickback
9   schemes" were "insufficient" where "no specific mailings are mentioned").  The complaint
10  does not offer specific allegations as to what defendant used the mail or wires, what
11  specific impermissible conduct was carried out over the wires or mail, or when such
12  conduct occurred.  Plaintiff's allegations therefore fail to satisfy Rule 9(b)'s pleading
13  requirements.  In view of this finding, the court need not address the other elements of
14  plaintiff's RICO cause of action.

15      Denial of leave to amend is appropriate "where the district court could reasonably
16  conclude that further amendment would be futile."  Sylvia Landfield, 729 F.3d at 1196.
17  "Leave to amend may also be denied for repeated failure to cure deficiencies by previous
18  amendment."  Abagninin, 545 F.3d at 742.  Further, dismissal with prejudice is
19  appropriate "when the movant presented no new facts but only 'new theories' and
20  'provided no satisfactory explanation for his failure to fully develop his contentions
21  originally.'"  Allen, 911 F.2d at 374.

22      Following the court's order dismissing plaintiff's RICO cause of action as alleged in
23  the SAC, plaintiff was given leave to amend "to allege . . . facts showing a pattern of
24  racketeering activity [and] predicate acts undertaken by DePuy and Dodgin".  SAC Order
25  at 26.  Plaintiff subsequently filed a third amended complaint, which as described above
26  again failed to plead facts showing a pattern of racketeering activity or predicate acts
27  undertaken by DePuy with the specificity required under Rule 9(b).

28      Plaintiff has had multiple opportunities to cure the very deficiencies still present in

his pleading. Furthermore, his most recent opportunity to amend was presented with an explanation of the SAC's deficiencies. In response, rather than pleading facts identifying specific predicate acts, plaintiff's most recent amendment largely presented "only 'new theories' and 'provided no satisfactory explanation for his failure to fully develop his contentions originally.'" Allen, 911 F.2d at 374.

As plaintiff has repeatedly failed to cure deficiencies by previous amendment, and as the court concludes that further amendment would be futile, plaintiff's RICO cause of action as alleged against the DePuy Defendants is DISMISSED WITH PREJUDICE.

### 6. Failure to Oppose or File a Statement of Nonopposition

Pursuant to this court's local rules, "[a]ny opposition to a motion . . . . must be filed and served not more than 14 days after the motion was filed." Civ. L.R. 7-3(a). "If the party against whom the motion is directed does not oppose the motion, that party must file with the Court a Statement of Nonopposition within the time for filing and serving any opposition." Civ. L.R. 7-3(b).

"Failure to follow a district court's local rules is a proper ground for dismissal." Ghazali v. Moran, 46 F.3d 52, 53 (9th Cir. 1995) (citing United States v. Warren, 601 F.2d 471, 474 (9th Cir. 1979)). "Before dismissing the action, the district court is required to weigh several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases of their merits; and (5) the availability of less drastic sanctions.'" Id. (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)).

The first and second factors both favor dismissal. A party's failure to timely oppose a motion to dismiss undermines the ability to settle the case following the narrowing of claims, proceed with discovery, pursue summary judgment, and ultimately schedule a trial date. Such non-compliance inherently delays resolution of the case and inures to the detriment of the public. See Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002) ("It is incumbent upon the Court to manage its docket without being subject to

routine noncompliance of litigants".); Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999) (describing court's need to control its docket).

The third factor, the risk of prejudice to the defendant, is related to the strength of the plaintiff's excuse for the default. See Yourish, 191 F.3d at 991. Plaintiff's counsel filed a request to extend the deadline to oppose the motion (with no opposition attached) on February 20—over four weeks after the opposition was due. He attributed the gross delay in even seeking an extension to the unavailability of his senior legal assistant due to elbow surgery (Dkt. 112-1 ¶ 4), the unavailability of his senior legal assistant due to the death of his parents (id.), his law firm's transition "to a new calendar system" (id. ¶ 5), and counsel's responsibilities in caring for his elderly mother (id. ¶ 6). While such a cavalcade of events could reasonably justify delay in finalizing an opposition brief, the court fails to understand how it explains filing a stipulated request to extend the filing deadline over four weeks after the filing itself was due. That is particularly the case where counsel's correspondence clearly indicates that he was actually aware of the deadline, and opposing counsel had agreed to stipulate to extending it. See Dkt. 108-2. Plaintiff's counsel argues that the court should extend his deadline to oppose because the delay was a result of "excusable neglect" under Fed. R. Civ. P. 6(b)(1)(B). But plaintiff's counsel's filing clarifies that his delay in seeking an extension was the result of *inexcusable* neglect. Plaintiff's motion for an extension of time to oppose the motion is accordingly DENIED.

Moreover, plaintiff has included parties other than the moving parties in this litigation, and his failure to advance the litigation with respect to the DePuy Defendants prejudices the others by imposing an unreasonable delay.

"The fourth factor favoring disposition of cases on the merits, by definition, weighs against dismissal." Enders v. Countrywide Home Loans, Inc., Case No. 09–cv–3213SBA, 2009 WL 4018512, at *2 (N.D. Cal. Nov. 16, 2009); see also Pagtalunan, 291 F.3d at 643 ("Public policy favors disposition of cases on the merits. Thus, this factor weighs against dismissal."). Here, however, the court notes that it has independently

17

assessed Defendants' motion on the merits as addressed above.

The fifth factor requires the court to consider less drastic alternatives to dismissal. Here, the court elects not to dismiss DePuy from the action outright but rather to grant their unopposed motion to dismiss certain causes of action alleged against them. This factor weighs against outright dismissal. The less drastic resolution of granting the unopposed motion to dismiss will not terminate the DePuy Defendants from the action entirely, as plaintiff maintains other causes of action against them.

Weighing the factors, the court resolves that granting the DePuy Defendants' motion to dismiss certain of the causes of action alleged against them is an appropriate remedy for plaintiff's failure to follow this district court's local rules requiring a timely opposition or a statement on non-opposition. This establishes independently sufficient grounds to GRANT defendants' motion to dismiss, in addition to the court's dismissal on the merits.

**CONCLUSION**

For the foregoing reasons, DePuy's motion to dismiss is GRANTED. Plaintiff's fourth cause of action for express warranty is DISMISSED WITH PREJUDICE as to the DePuy Defendants. Plaintiff's fifth cause of action for implied warranty is DISMISSED WITH PREJUDICE as to the DePuy Defendants. Plaintiff's sixth cause of action for intentional misrepresentation is DISMISSED WITH PREJUDICE as to the DePuy Defendants. Plaintiff's seventh cause of action for implied warranty is DISMISSED WITH PREJUDICE as to the DePuy Defendants. And plaintiff's eighth cause of action alleging a RICO violation is DISMISSED WITH PREJUDICE as to the DePuy Defendants.

**IT IS SO ORDERED.**

Dated: February 25, 2025

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge